[No. D051603. Fourth Dist., Div. One. Dec. 16, 2008.]

RAMON MENDOZA et al., Plaintiffs, Cross-defendants and Appellants, v. JOSE RUESGA, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Barbara K. Strickland for Plaintiffs, Cross-defendants and Appellants.

Dorothy A. Johnson and Cynthia L. Rice for California Rural Legal Assistance Foundation as Amicus Curiae on behalf of Plaintiffs, Cross-defendants and Appellants.

The Law Offices of Jose C. Rojo, Jose C. Rojo and Barbara Treash-Osio for Defendant, Cross-complainant and Appellant.

**OPINION**

**McCONNELL, P. J.**—California's immigration consultants act (ICA) (Bus. & Prof. Code, § 22440 et seq.)[1] regulates nonattorneys who offer advice or assistance to a particularly vulnerable population, immigrants seeking legal residency in the United States. Plaintiffs' appeal involves questions of first

---

[1] Statutory references are to the Business and Professions Code unless otherwise specified.

impression: (1) whether there is a right to a jury trial on a cause of action for violation of the ICA, and (2) whether the unclean hands doctrine may be raised as an affirmative defense to an ICA cause of action. We answer the second question in the negative and partially reverse the judgment on the complaint for prejudicial error. For purposes of retrial, we confirm that there is a right to a jury trial on ICA claims for damages.

Defendant does not challenge the judgment against him on his cross-complaint. We find his issues pertaining to the judgment on the complaint either unpersuasive or moot in light of our holding in plaintiffs' appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2006 plaintiffs Ramon Mendoza, Moises Juarez, Jose Angel Saldaña, Maria Esther Reynoso, Ricardo Chavez and Martin Fernando Nuño filed a complaint against Jose Ruesga for violation of the ICA, breach of fiduciary duty and intentional infliction of emotional distress.[2] Plaintiffs are admittedly undocumented immigrants. The complaint alleged Ruesga acted as an immigration consultant within the meaning of the ICA, and he charged each plaintiff $16,000 to get them work permits and legal residence in the United States.[3] The plaintiffs allegedly learned later that they did not qualify for the benefits Ruesga sought on their behalves and their applications "have been or will be denied."[4]

Further, the complaint alleged Ruesga violated the ICA by failing to provide plaintiffs with written contracts (§ 22442, subd. (a)); failing to display a required notice (§ 22442.2); failing to provide them with copies of documents and completed forms (§ 22443, subd. (a)); failing to post a bond

---

[2] The complaint also named Patricia Ruesga and Julio Molina as defendants, but they are not involved in this appeal.

[3] Ruesga actually charged Mendoza $15,000.

[4] Ruesga applied for amnesty for plaintiffs as purported members of a class included in a settlement agreement in the federal court cases, *Catholic Social Services, Inc. v. Ridge* (E.D.Cal., Jan. 25, 2002, Civ. No. S-86-1343-LLK) or *Newman v. U.S. Citizenship & Immigration Services* (C.D.Cal., Feb. 17, 2004, Civ. No. 87-4757-WDK(CWx)). Under the Immigration Reform and Control Act of 1986 (Pub.L. No. 99-603 (Nov. 6, 1986) 100 Stat. 3359), undocumented immigrants could obtain legal status if they entered this country before January 1, 1982, and resided continuously here for a specified period. The lawsuits successfully challenged a rule that disqualified persons from receiving amnesty based on brief travel abroad during the period of required residency. (8 U.S.C. § 1255a(a)(2); Stock, *Immigration and Naturalization Law* (2005) 39 Int'l Law. 429, 443.) None of the plaintiffs was eligible for amnesty under the settlements. Chavez, Juarez and Mendoza first came to this country in 1988, Saldaña in 1990, Nuño in 1991 and Reynoso in 1999.

with the Secretary of State (§ 22443.1); making false and misleading statements to plaintiffs and providing false documents in support of plaintiffs' applications (§ 22444, subd. (a)); and representing he had contacts inside the United States Citizenship and Immigration Services (Immigration Services) (§ 22444, subd. (c)). The complaint prayed for civil penalties for each violation of the ICA (§ 22445, subd. (a)(1), (2)), actual damages trebled (§ 22446.5, subd. (a)), and attorney fees (§ 22446.5, subd. (a)). Although injunctive relief is available in an action under the ICA (§ 22446.5, subd. (a)), plaintiffs did not seek such relief.[5]

In his answer, Ruesga raised the affirmative defense of unclean hands. He also filed a cross-complaint against plaintiffs Mendoza, Juarez, Reynoso and Chavez.[6] The cross-complaint arose from an incident on February 1, 2006, in which cross-defendants allegedly held Ruesga against his will in Reynoso's office and forced him "to sign two false documents" in which he purportedly made admissions and "agreed to pay sums of money to [cross-defendants]."

Plaintiffs moved in limine to preclude a jury trial on their claim for compensatory damages under the ICA. The court granted the motion, but it nonetheless later allowed a special verdict form in which the jury was required to decide ICA issues. Plaintiffs also moved to exclude evidence pertaining to the unclean hands defense, but the court denied the motion.[7]

The evidence showed plaintiffs were unqualified for amnesty because they did not first come to the United States before January 1, 1982. Generally, the evidence also showed Ruesga told them he could nonetheless help them obtain legal status in this country, he had inside contacts at Immigration Services, and he could expunge any deportations or other impediments to obtaining amnesty. Ruesga provided plaintiffs with questionnaires that sought personal information such as addresses and employment histories, and they filled them out and returned them to him. He later gave them completed application forms, which claimed they first came to this country before 1982, and indicated where they should sign them. Plaintiffs could not or did not

---

[5] Violation of the ICA is a misdemeanor punishable by a fine of not less than $2,000 or more than $10,000 as to each client victimized, by imprisonment in county jail for not more than one year, or by both fine and imprisonment. (§ 22445, subd. (b).) Subsequent violations of certain provisions of the ICA are misdemeanors subject to fines not to exceed $100,000 per violation, and the subsequent violation of other provisions are felonies punishable by imprisonment in state prison. (§ 22445, subd. (c).)

[6] The cross-complaint also named plaintiff Saldana as a cross-defendant, as well as a third party, but by the time of trial Ruesga was no longer pursuing them.

[7] Ruesga's answer to the complaint also raised the affirmative defense of in pari delicto, but the court did not instruct on it at trial and the special verdict form did not address it. Ruesga raises no error related thereto.

read the applications, but signed them under penalty of perjury and sent them to Immigration Services.

Plaintiffs eventually realized Ruesga's supposed contacts in Immigration Services would not save the day. Immigration Services began calling them in for interviews and demanding records showing they met the residency requirement. Ruesga provided at least some of the plaintiffs with letters he signed that vouched for their characters and falsely stated he had known them since 1982, and letters from a farm labor contractor that falsely stated they worked for the company for a period beginning in 1982. Plaintiffs, however, learned those documents would not suffice and their applications were doomed.

Ruesga admitted he took plaintiffs' money for immigration matters, and he did not comply with the procedural requirements of the ICA. Ruesga also admitted giving plaintiffs the questionnaires. He essentially testified, however, that he was a go-between between plaintiffs and a "Mr. Molina," with whom Ruesga met in Tijuana or near the border. Ruesga said he gave plaintiffs' money to Molina, but did not get a receipt. Ruesga gave plaintiffs' completed questionnaires to Molina without reviewing them, and Molina gave the completed applications to him for delivery to plaintiffs. When asked whether he gave plaintiffs letters falsely stating he had known them since 1982, his attorney advised him to invoke the Fifth Amendment privilege against self-incrimination.

Ruesga admitted telling plaintiffs their cases were "guaranteed," but said he was merely relaying Molina's position. Ruesga testified that Molina told him the applications were legal, and in turn he told the plaintiffs they were legal. Ruesga also testified he told a plaintiff he would not get involved unless the applications were legal because he "would get burned." Ruesga testified that Mendoza asked him to provide false evidence. He also admitted, however, that Mendoza and Reynoso told him plaintiffs wanted only truthful evidence.

Despite Ruesga's insistence the applications were legal, he argued plaintiffs had unclean hands because they knew they were unqualified for amnesty, they submitted false information in their applications, they signed applications falsely stating they came here before 1982, and they insisted that Ruesga provide them with fraudulent evidence to support their applications.

On the complaint, the jury in its special verdict found Ruesga acted as an immigration consultant for plaintiffs, and he violated the ICA in several

procedural respects, such as by failing to provide written contracts and post a bond, but the violations were not a legal cause of plaintiffs' damages. The jury also found Ruesga made false and misleading statements to plaintiffs that he had contacts inside Immigration Service and he "could erase or remove any prior record [plaintiffs] had with Immigration authorities," and the statements were the legal cause of their damages. The jury, however, found plaintiffs' unclean hands barred the recovery of damages for violation of the ICA.

Further, on the breach of fiduciary duty cause of action, the jury found Ruesga was plaintiffs' agent, he breached his duties to them, the breach was a legal cause of their damages, and their conduct did not bar recovery. The jury awarded Mendoza $7,500 and each of the other plaintiffs $8,000, which was one-half of what they paid Ruesga. The jury also found Ruesga's conduct was "outrageous," but he did not intentionally cause them emotional distress.

The jury returned a second special verdict on the cross-complaint. The jury found the cross-defendants' conduct toward Ruesga was not "outrageous," and they did not intentionally deprive him of his freedom of movement by the use of physical barriers or physical force.

Plaintiffs then moved for civil sanctions, treble damages and attorney fees under the ICA. The court declined to assess any damages because an award would conflict with the jury's finding on the unclean hands defense. The court, however, awarded plaintiffs a total of $2,000 in civil penalties, $24,457 in statutory attorney fees and $4,962 in other costs as prevailing parties. Judgment was entered on July 5, 2007.

I

*Plaintiffs' Appeal*

A

*Unclean Hands*

1

"The defense of unclean hands arises from the maxim, ' " 'He who comes into Equity must come with clean hands.' " ' [Citation.] The doctrine

demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978 [90 Cal.Rptr.2d 743].)

"The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy. [Citations.] Unclean hands applies when it would be inequitable to provide the plaintiff any relief, and provides a complete defense to both legal and equitable causes of action. [Citations.] 'Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries.' " (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 56 [58 Cal.Rptr.3d 225].)

The "unclean hands doctrine is not a legal or technical defense to be used as a shield against a particular element of a cause of action. Rather, it is an equitable rationale for refusing a plaintiff relief where principles of fairness dictate that the plaintiff should not recover, regardless of the merits of his claim. It is available to protect the court from having its powers used to bring about an inequitable result in the litigation before it." (*Kendall-Jackson Winery, Ltd. v. Superior Court, supra,* 76 Cal.App.4th at p. 985.)

2

Plaintiffs contend that as a matter of law the unclean hands doctrine is inapplicable to their cause of action under the ICA because it is based on Ruesga's violation of statutes intended to protect consumers.[8] We agree with plaintiffs. "It is true that when the Legislature enacts a statute forbidding certain conduct for the purpose of protecting one class of persons from the activities of another, a member of the protected class may maintain an action notwithstanding . . . that he has shared in the illegal transaction. The protective purpose of the legislation is realized by allowing the plaintiff to maintain his action against a defendant within the class primarily to be deterred." (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 153 [308 P.2d 713].)

There is no published opinion pertaining to the ICA, but cases in the analogous context of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) are persuasive. "Courts have long held that the

---

[8] Amicus curiae, California Rural Legal Assistance Foundation, joins in this contention.

equitable defense of unclean hands is not a defense to an unfair trade or business practices claim based on violation of a statute. To allow such a defense would be to judicially sanction the defendant for engaging in an act declared by statute to be void or against public policy. [Citation.] It has long been the law that '[t]he equitable doctrine of the refusal of aid to anyone with "unclean hands," does not, as such, apply to actions under [the unfair practices act].' " (*Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 543 [72 Cal.Rptr.3d 888] (*Ticconi*).) "[E]quitable defenses may not be asserted to wholly defeat a UCL claim since such claims arise out of unlawful conduct." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179 [96 Cal.Rptr.2d 518, 999 P.2d 706] (*Cortez*).)

■ In *Cortez*, the plaintiff brought a proposed representative action against her employer under the UCL for restitution of unpaid overtime wages, with violation of Labor Code provisions being the predicate act. (*Cortez, supra*, 23 Cal.4th at p. 169.) Without discussing the particular alleged wrongdoing of the plaintiff, our Supreme Court held a defendant may not use the unclean hands doctrine to defeat a UCL claim, although the court may consider the equities in fashioning a remedy under the UCL. (23 Cal.4th at p. 179.) Justice Werdegar explained in her concurring opinion that, "in general, as between a person who is enriched as the result of his or her violation of the law, and a person intended to be protected by the law who is harmed by its violation, for the violator to retain the benefit would be unjust." (*Cortez, supra*, 23 Cal.4th at p. 182 (conc. opn. of Werdegar, J.).)

In *Ticconi*, the plaintiff brought a proposed representative action against his health insurer under the UCL for violation of Insurance Code provisions "by failing to attach his application to or endorse it on the insurance policy when issued, and later rescinding the policy on the ground he had made misrepresentations in that application." (*Ticconi, supra*, 160 Cal.App.4th at p. 534.) The trial court denied class certification based on the ground that individual factual issues predominated because of the insurer's defense of unclean hands. The Court of Appeal held the trial court erred as a matter of law as the unclean hands defense is unavailable in a UCL action. (160 Cal.App.4th at p. 534.) The court explained: "To allow an insurer to argue as a defense to the UCL claim that putative class plaintiffs have unclean hands because they misrepresented material medical information on unattached and unendorsed insurance applications, would be potentially to sanction the insurer's unlawful and unfair conduct." (*Id.* at p. 544.)

In *Kofsky v. Smart & Final Iris Co.* (1955) 131 Cal.App.2d 530 [281 P.2d 5], the court held that assuming the plaintiff violated the UCL by selling cigarettes and other merchandise below cost for the purpose of injuring competitors or destroying competition, his action against the defendant for injunctive relief for the same conduct was not subject to an unclean hands defense. The court explained that since the defendant's conduct was against public policy per statute, the unclean hands doctrine was inapplicable. (131 Cal.App.2d at p. 532.)

Here, as in the UCL context, allowance of an unclean hands defense would undermine public policy. "Consumers seeking to legalize their status in this country have long been subject to considerable deception and outright consumer fraud for many reasons. Immigrants are particularly vulnerable to fraud because of a combination of their tenuous status in this country and their lack of knowledge about their legal rights. Their desire to normalize their status makes many immigrants more willing to try anything promised to them by seemingly trustworthy and knowledgeable individuals." (Castro, *Immigration Consultant Fraud: The Role of the Prosecutor, Legal Service Providers and the Bar* (State Bar Public Law Section 2002) 25 Public L.J. No. 1, p. 3, fn. omitted (hereafter Castro).)

"The unique vulnerability of the immigration population, the lack of training of non-lawyer providers of immigration services and the severity of the ramifications that can result from a botched job account for the particularly acute threats to the public interest in the field of immigration due to the unauthorized practice of law." (Ashbrook, *The Unauthorized Practice of Law in Immigration: Examining the Propriety of Non-Lawyer Representation* (1991) 5 Geo. J. Legal Ethics 237, 249.) "Frequently enough, the immigration consultant knows that the person is not entitled to any benefits under immigration law or is recklessly indifferent to what the law requires. They file applications with [Immigration Services] that trigger removal rather than legal benefits." (Moore, *Fraud, the Unauthorized Practice of Law and Unmet Needs: A Look at State Laws Regulating Immigration Assistants* (2004) 19 Geo. Immigr. L.J. 1, 6 (hereafter Moore).) Poor immigrants often lose their life savings to unscrupulous immigration consultants. (Castro, *supra*, at p. 4.)

The Legislature enacted the ICA in 1986 (Stats. 1986, ch. 248, § 11, p. 1213) in response to the federal Immigration Reform and Control Act of 1986, which created opportunities for undocumented immigrants to seek amnesty, but also created opportunities for unscrupulous persons to prey on them. (State Bar, Assem. Bill No. 4033 task force, report and recommendations regarding provision of immig. and amnesty services in Cal. (Feb. 21,

1992) p. 2 (hereafter 1992 State Bar Report); see Stats. 1990, ch. 1236, p. 5156 [authorizing creation of task force].) The ICA governs "immigration consultant[s]," defined as persons who "give[] nonlegal assistance or advice on an immigration matter." (§ 22441, subd. (a).) As originally enacted, the ICA included provisions for consumer notice and written contracts, made certain deceptive practices misdemeanors and allowed any aggrieved person to seek injunctive relief and damages. (1992 State Bar Rep., *supra*, at p. 7.)

The 1992 State Bar Report explains that despite enactment of the ICA, fraud appeared to be increasing, particularly among undocumented aliens "who are desperate to gain work authorization, amnesty or other protection from deportation." (1992 State Bar Rep., *supra*, at p. 4.) Many nonattorneys that offered immigration services "h[e]ld themselves out as a 'notario,' 'licenciado,' or 'abogado[,]'" terms which can connote legal training or licensure to members of the Latin American immigrant community." (*Ibid.*) Further, some immigration consultants failed to perform work, invented fictitious immigration laws and told clients they qualified for nonexistent benefits, sold false documents to clients, and made claims of special influence with immigration officers. (*Id.* at p. 5.)

The Legislature has amended the ICA several times to expand consumer protection to immigrants, whether documented or undocumented. (Stats. 1987, ch. 484, § 1, p. 1735; Stats. 1994, ch. 561, § 2, p. 2835; Stats. 2003, ch. 384, § 1; Stats. 2006, ch. 605, § 2; see also Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2520 (1993–1994 Reg. Sess.) as amended June 16, 1994, p. 3.) The ICA now requires an immigration consultant to make certain disclosures (§ 22442.2), to provide a client with a signed receipt for each payment and an accounting every two months (§ 22442.1), and to submit to a background check (§ 22441.1) and fingerprinting (22442.4); prohibits the use of terms in advertising that imply he or she is an attorney or notary public (§ 22442.3); and imposes bond requirements (§ 22443.1).

We conclude that as a matter of law the unclean hands doctrine is not an affirmative defense to an ICA cause of action. Application of the doctrine would allow unscrupulous immigration consultants to go unpunished and undermine the protective purposes of the legislation. The dishonesty of undocumented immigrants cannot be countenanced, of course, but the Legislature was undoubtedly aware of that potential when it enacted the ICA and subsequent amendments. (See, e.g., Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2520 (1993–1994 Reg. Sess.), *supra*, pp. 3–4 ["Victims include undocumented immigrants who are poor, have little knowledge of the United States' legal system, and who are desperate to gain work authorization, amnesty, or other protection from deportation."].) Yet, while consistently

expanding protections for immigrants, the Legislature has imposed no obligations on them or limitations on their recovery.

## B

### *Jury Trial*

Plaintiffs contend the court erred by allowing the jury to determine their claims under the ICA because they are equitable in nature. We answer this question for the trial court's convenience on retrial. The issue is a question of law we review independently. (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 23 [24 Cal.Rptr.3d 233].)

■ "The right to a jury trial is guaranteed by our Constitution. (Cal. Const., art. I, § 16.) We have long acknowledged that the right so guaranteed, however, is the right as it existed at common law in 1850, when the Constitution was first adopted, 'and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact.' [Citations.] As a general proposition, '[T]he jury trial is a matter of right in a civil action at law, but not in equity.' " (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8 [151 Cal.Rptr. 323, 587 P.2d 1136].)

" ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law." ' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial." (*C & K Engineering Contractors v. Amber Steel Co., supra*, 23 Cal.3d at p. 9.)

■ "Determining whether the gist of a claim is in law or equity 'depends in large measure upon the mode of relief to be afforded.' " (*Asare v. Hartford Fire Ins. Co.* (1991) 1 Cal.App.4th 856, 867 [2 Cal.Rptr.2d 452].) Generally, an action for damages is legal in nature. (*Ibid.*; *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 672 [111 Cal.Rptr. 693, 517 P.2d 1157].) Code of Civil Procedure section 592 provides that an action "for injuries" must be tried by a jury absent waiver.

"The right to a trial by jury is fundamental and 'should be zealously guarded by the courts.' [Citations.] 'In case of doubt . . . , the issue should be resolved in favor of preserving a litigant's right to trial by jury . . . .' " (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 411 [212 Cal.Rptr. 151, 696 P.2d 645].) " 'Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.' " (*Beacon Theatres v. Westover* (1959) 359 U.S. 500, 501 [3 L.Ed.2d 988, 79 S.Ct. 948].)

We conclude there is a right to a jury trial on an ICA cause of action for damages. The ICA specifically provides that a consumer may recover compensatory damages from an immigration consultant. (§ 22446.5, subd. (a).) Further, although violations of the ICA include such things as an immigration consultant's failure to provide a written contract or to post a bond, the statute is principally intended to combat fraud (1992 State Bar Rep., *supra*, at p. 1; Moore, *supra*, at pp. 26–27), an analogous legal action that existed in 1850. (*Buzard v. Houston* (1886) 119 U.S. 347, 352–353 [30 L.Ed. 451, 7 S.Ct. 249] [in determining whether a jury trial right existed at common law as of 1791, for purposes of a right to trial under the federal constitution's Seventh Amendment, the United States Supreme Court concluded a fraud action for damages was generally enforced at law rather than equity].)

The essential elements of a fraud claim are (1) representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; and (5) reliance and resulting damage (causation). (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 710, p. 125.) Under the ICA, it is unlawful for an immigration consultant to make false or misleading statements to a client, make any guarantee or promise to a client unless it is in writing and has some basis in fact, or make any statement that the immigration consultant has special influence with federal immigration authorities. (§ 22444, subds. (a)–(c).) Here, for instance, the jury determined that while Ruesga violated procedural requirements of the ICA, plaintiffs' damages arose from his fraudulent conduct.

The ICA also allows for injunctive relief, which is an equitable matter (*Pacific Hills Homeowners Assn. v. Prun* (2008) 160 Cal.App.4th 1557, 1567 [73 Cal.Rptr.3d 653]), but an alternative request for equitable relief in an action for compensatory damages does not alter its legal nature. "In such a situation, if a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as

"incidental" to the equitable relief sought.'" (*Tull v. United States* (1987) 481 U.S. 412, 425 [95 L.Ed.2d 365, 107 S.Ct. 1831].) The ICA does not intertwine equitable relief with the assessment of damages. (See *Teamsters v. Terry* (1990) 494 U.S. 558, 571 [108 L.Ed.2d 519, 110 S.Ct. 1339].) Rather, each type of relief is separately authorized. "A person claiming to be aggrieved by a violation of this chapter by an immigration consultant may bring a civil action for injunctive relief *or* damages, or both." (§ 22446.5, subd. (a), italics added.) Moreover, the injunction remedy is unhelpful to plaintiffs because they sought no such remedy. (*Teamsters v. Terry*, at p. 571.)

Plaintiffs' reliance on cases pertaining to the UCL (§ 17200 et seq.) is misplaced. In *Hodge v. Superior Court* (2006) 145 Cal.App.4th 278, 284 [51 Cal.Rptr.3d 519], the court held no jury trial was available in a UCL action because "the UCL provides only for equitable remedies. 'Prevailing plaintiffs are generally limited to injunctive relief and restitution.' [Citations.] *Damages are not available*. [Citations.] [¶] Thus, the UCL is not simply a legislative conversion of a legal right into an equitable one. It is a separate equitable cause of action." (Italics added.) In *Cortez, supra,* 23 Cal.4th at pages 173–174, the court explained: "The exclusion of claims [in a UCL action] for compensatory damages is . . . consistent with the overarching legislative concern to provide a *streamlined* procedure for the prevention of ongoing or threatened acts of unfair competition. To permit individual claims for compensatory damages to be pursued as part of such a procedure would tend to thwart this objective by requiring the court to deal with a variety of damage issues of a higher order of complexity." Here, in contrast, the ICA expressly authorizes an action for compensatory damages rather than limiting plaintiffs' monetary recovery to restitution, or disgorgement of ill-gotten gains. (§ 22446.5, subd. (a).)[9]

■ Plaintiffs also point out that the language of section 22446.5 indicates the Legislature intended to provide for a court trial rather than a jury trial. It provides, "If the *court* finds that the defendant has violated a provision of this chapter, it shall award actual damages. . . ." (§ 22446.5, subd. (a), italics added.) The statutory language, however, is not dispositive. "The constitutional right to a jury trial 'does not permit the Legislature to confer on the courts the power of trying according to the course of chancery any question which has always been triable according to the course of the common law by

---

[9] We agree, however, that a claim for civil penalties under the ICA is a matter for the trial court rather than a jury. (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 182, 183–184 [62 Cal.Rptr.3d 722] [civil penalties for statutory violations "are assessed upon consideration of articulated factors that do not primarily take into account any harm suffered by the plaintiff"]; see also § 22445, subd. (a)(2) [enumeration of factors court is to consider in assessing civil penalties].) Here, the trial court correctly considered the issue of civil penalties.

a jury.' [Citation.] In other words, the Legislature cannot, 'by providing new remedies . . . in form equitable,' convert a legal right 'into an equitable one so as to infringe upon the right of trial by jury.' " (*Wisden v. Superior Court* (2004) 124 Cal.App.4th 750, 755 [21 Cal.Rptr.3d 523].)[10]

On retrial, Ruesga is again entitled to a jury trial on plaintiffs' cause of action for damages under the ICA.

## II

### *Ruesga's Appeal*

Ruesga raises no issue pertaining to the judgment against him on his cross-complaint. Rather, he contends that as a matter of law a client may not sue an immigration consultant for breach of fiduciary duty because in enacting the ICA the Legislature intended to supplant any relevant common law causes of action. Again, we answer this question for the trial court's convenience on retrial.

 Ruesga cites *Rojo v. Kliger* (1990) 52 Cal.3d 65, 80 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*), which explains the "general rule is that statutes *do not* supplant the common law unless it appears that the Legislature intended to cover the entire subject." (Italics added.) "As a general rule, where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive. [Citations.] But where a statutory remedy is provided for a preexisting common law right, the newer remedy is generally considered to be cumulative, and the older remedy may be pursued at the plaintiff's election." (*Id.* at p. 79.)

---

[10] Contrary to plaintiffs' position, *County of Sacramento v. Superior Court* (1974) 42 Cal.App.3d 135 [116 Cal.Rptr. 602] (*County of Sacramento*), does not show that the Legislature's reference to the *court* assessing damages in section 22446.5 is dispositive of the jury trial issue. In *County of Sacramento*, the county sought a writ of mandate to compel the court to grant a jury trial of factual issues involved in the real party in interest's petition for relief under Government Code section 946.6 from tort claim filing requirements. The court noted the statute did not refer to a jury and provided, " 'The *court* shall make an independent determination upon the petition.' " (*County of Sacramento*, at p. 139.) Further, the court noted it had broad discretion in granting or denying such petitions. (*Ibid.*) The appellate court held there was no right to a jury trial because Government Code section 946.6 had no counterpart in 1850 and the statute "provides for a 'special proceeding,' rather than a common law action." (*County of Sacramento*, at p. 140.)

In *Rojo*, the court rejected the argument that the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) "is such a 'general and comprehensive legislation' as to imply a legislative intent to displace or preclude employees' common law rights." (*Rojo, supra,* 52 Cal.3d at p. 80.) Among other factors, the court noted that under FEHA it was not authorized to award either punitive or compensatory damages to plaintiffs, and in some instances "the employer's conduct or the employee's injuries may be such that judicial remedies, including punitive and compensatory damages, can provide the only adequate form of relief." (52 Cal.3d at p. 81.) The court explained that while employment discrimination may result in injury entitling an employee to relief under FEHA, the same conduct "may also simultaneously cause additional injury outside the ambit of statutory protection. For example, . . . an employer's discriminatory actions may constitute assault and battery or outrageous conduct redressable under a theory of intentional infliction of emotional distress." (52 Cal.3d at p. 81.)[11]

We see no indication the Legislature intended to occupy the field of all possible contractual relations and interactions between immigration consultants and their clients. Again, the ICA is principally intended to curb fraud, a cause of action that existed at common law. Further, conduct by an immigration consultant giving rise to relief under the ICA may also give rise to punitive damages for breach of fiduciary duty or intentional infliction of emotional distress. Although the ICA allows the recovery of compensatory damages, it does not provide for punitive damages.

Ruesga's actual complaint about the breach of fiduciary duty cause of action is that it could supposedly allow plaintiffs double recovery. That fear, however, is unfounded. "Regardless of the nature or number of legal theories advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence. [Citation.] Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited." (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158–1159 [17 Cal.Rptr.2d 608, 847 P.2d 574].)[12]

---

[11] In *Rojo*, the court also relied on express language in FEHA that disclaimed any Legislative intent to repeal other state laws pertaining to employment discrimination. (*Rojo, supra,* 52 Cal.3d at p. 73.) The ICA is silent on whether it is a cumulative remedy or intended to supplant common law.

[12] Given our holdings in plaintiffs' appeal, we are not required to address Ruesga's contentions pertaining to the court's award of attorney fees on the ICA cause of action or the propriety of the jury's verdict on the breach of fiduciary duty cause of action.

## DISPOSITION

The judgment is reversed insofar as it pertains to the complaint's causes of action for violation of the ICA, and resultant award of attorney fees and costs, and breach of fiduciary duty. The judgment is affirmed insofar as it concerns the complaint's cause of action for the intentional infliction of emotional distress and the cross-complaint.[13] Plaintiffs are entitled to costs on appeal.

McIntyre, J., and Aaron, J., concurred.

The petition of appellant Jose Ruesga for review by the Supreme Court was denied March 11, 2009, S170065.

---

[13] We asked the parties for supplemental briefing on the proper disposition should we decide in plaintiffs' favor on the unclean hands issue. They agree the judgment is nonseverable as to the ICA and breach of fiduciary duty causes of action as they are inextricably interwoven. Plaintiffs, however, concede the judgment is severable as to their cause of action for intentional infliction of emotional distress and no retrial is warranted.