Filed 1/31/23  Choi v. Kang CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SOO OK CHOI, | B316549 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC692532) |
| v. | |
| SAMUEL JINKYOO KANG et al., | |
| Defendants and Appellants. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County.  Holly J. Fujie, Judge.  Affirmed in part, reversed and remanded in part.

David S. Kim & Associates, David S. Kim and Todd A. Fuson for Defendants and Appellants.

Medvei Law Group and Sebastian M. Medvei for Plaintiff and Respondent.

_____

A default judgment was entered in favor of plaintiff and respondent Soo Ok Choi and against defendants and appellants Samuel Jinkyoo Kang (Kang), NIW USA, Inc. (NIW), REX Counselor, Inc. (REX), and Yoonsun Ban (Ban) following: (1) REX and Ban's failure to answer plaintiff's first amended complaint (FAC), and (2) the trial court's order imposing terminating sanctions against Kang and NIW for failure to comply with discovery orders (Code Civ. Proc., § 2023.030, subd. (d)).[1] Defendants appeal, arguing that the trial court erred in imposing terminating sanctions and entering a default judgment for excessive damages.[2]

We affirm in part and reverse in part. We conclude that the trial court did not abuse its discretion in imposing terminating sanctions against Kang and NIW for their failure to comply with discovery orders. However, we agree with defendants that the damage award must be reversed because it exceeds the amount identified in the FAC.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The pleadings*

On February 1, 2018, plaintiff brought this action against defendants (and others) alleging violation of the Immigration Consultants Act (the ICA; Bus. & Prof. Code, § 22440 et seq.). In the operative FAC, she sought, inter alia, general and special damages, treble damages, and civil penalties in the amount "of

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Defendants do not challenge the entry of Ban and REX's defaults as a result of their failure to answer the FAC.

2

$100,000 for each individual violation of the ICA, estimated to exceed $2,000,000." And, she requested costs and attorney fees.

As is relevant to the issues raised in this appeal, Kang and NIW filed an answer to the FAC. Ban and REX never answered the FAC and their defaults were entered.

*Order to comply with plaintiff's discovery requests (Dec. 2, 2019)*

Early in the litigation, plaintiff served a number of discovery requests upon defendants, including, inter alia, special interrogatories to Kang and a request for production of documents to NIW. Defendants objected, and the parties met and conferred in an effort to resolve their dispute. When no resolution was reached, plaintiff brought multiple motions to compel further responses to the discovery.[3]

In advance of those motions, the trial court ordered the parties to attend an informal discovery conference on December 2, 2019. At that conference, the parties stipulated to the issuance of the following order: "Defendants shall serve complete, code-compliant and verified responses to [three sets of form interrogatories, four sets of requests for admission, one set of special interrogatories, and three sets of requests for production of documents] by December 31, 2019, close of business."

*Order to comply with trial court order compelling defendants to respond to plaintiff's discovery requests (Aug. 11, 2020)*

When defendants failed to provide the court-ordered discovery responses, plaintiff brought a motion to compel

---

[3] These motions are not part of the appellate record.

compliance with the trial court's December 2, 2019, order. Plaintiff also requested terminating sanctions.

Defendants failed to oppose the motion and did not appear at the hearing.

On August 11, 2020, the trial court denied plaintiff's request for terminating sanctions: "The Court finds that while Defendants failed to comply with the Court's December 2, 2019 . . . order, terminating sanctions are not appropriate at this time. Defendants have only failed to comply with one order of this Court with respect to discovery." However, the trial court did order defendants to comply with the December 2, 2019, order and provide "complete, code-compliant, and verified discovery responses" by no later than September 4, 2020. The trial court continued: "If Defendants do not comply with such order or flouts the discovery process in another manner, and Plaintiff files a motion for terminating sanctions in the future, the Court will consider issuing terminating sanctions."

*Second order to comply with trial court order compelling defendants to respond to plaintiff's discovery requests (Oct. 22, 2020)*

When defendants failed to provide discovery responses by September 4, 2020, plaintiff brought another motion for terminating sanctions. Again, defendants failed to oppose the motion.

On October 22, 2020, the trial court again ordered defendants "to provide code-compliant verified responses without objections" by October 29, 2020. In so ruling, the trial court again warned defendants that if they failed to comply, plaintiff could file an ex parte application for terminating sanctions.

4

*Defendants partially comply with the trial court order; plaintiff's ex parte application for terminating sanctions*

On October 29, 2020, defendants provided partial responses to plaintiff's discovery requests. Missing was any response from NIW to the request for production of documents propounded to it and any response from Kang to the special interrogatories propounded to him.

Defendants' counsel submitted a declaration in opposition to the ex parte application. He averred that when he emailed the discovery responses, he "could not email the documents, because the file was too large, even sent by itself. I e-mailed counsel separately, stating this fact, and assuring him I would produce the documents the next day, by personal service. This did occur—I brought the documents (and printouts of all the discovery responses) to Plaintiff's counsel's office myself and personally handed it in an envelope to the receptionist."

Counsel added: "In addition when emailing the documents, I inadvertently failed to include one document, Defendant Kang's responses to Special Interrogatories, although that document had been created and verified. . . . The Responses to Special Interrogatories [were] also served personally in the envelope to counsel's office."

After entertaining oral argument, the trial court denied plaintiff's ex parte application.[4]

---

[4] We were not provided with a reporter's transcript or settled statement setting forth the trial court's reasons for denying the ex parte application.

*Third order to comply with trial court order compelling defendants to respond to plaintiff's discovery requests (Jan. 12, 2021)*

Because defendants' responses to her discovery requests were still defective, on or about November 30, 2020, plaintiff brought another motion for terminating sanctions.

The trial court denied plaintiff's request for terminating sanctions: "Plaintiff's counsel . . . declares Kang and NIW failed to comply with the Court's October 22, 2020 order—as well as prior discovery orders—because NIW and Kang provided late and non-compliant responses to certain outstanding discovery. . . . [Counsel], however, did not attach such responses as an exhibit to his declaration so the Court cannot ascertain the sufficiency of such purported defective discovery responses. Moreover, while the opposition argues that Kang and NIW eventually complied with the Court's October 22, 2020 order and the motion for terminating sanctions should not be granted, there is no: (1) statement in [defense counsel's] declaration . . . that discovery obligations were satisfied by Kang and NIW in their entirety; and (2) attachment to [defense counsel's] declaration . . . for the Court to ascertain the sufficiency of Kang and NIW's discovery responses." Thus, the trial court expressly "exercise[d] its discretion and [found] that terminating sanctions [were] not appropriate at [that] time."

"The Court, however, [did] order Defendants to comply with the Court's October 22, 2020 discovery order in its entirety given that Defendants present[ed] no evidence of compliance. Defendants [were] ordered to comply with such order by serving complete, code-compliant, and verified discovery responses, without objection, within one week of this order as to the

6

following discovery: (1) NIW [was] to provide responses to Plaintiff's Request for Production of Documents, Set One; and (2) Kang [was] ordered to provide responses to Plaintiff's Special Interrogatories, Set One." Defendants were cautioned: "If Kang and NIW do not comply with such order or flout the discovery process in another manner, and Plaintiff files another motion for terminating sanctions in the future, the Court will consider issuing terminating sanctions."

*Order for terminating sanctions (Feb. 25, 2021)*

Defendants again did not comply, prompting plaintiff to bring yet another motion for terminating sanctions. Defendants did not file an opposition to the motion, although defense counsel submitted a responsive declaration. He averred that "there is no evidence that Defendants have not complied with the Court's discovery orders."

On February 25, 2021, the trial court granted plaintiff's motion, reasoning: "Given Defendants' history of not complying with this Court's discovery orders and the lack of opposition to the Motion, the Court GRANTS the Motion." Kang and NIW's defaults were entered.

*Judgment and appeal*

Plaintiff then submitted her default judgment package to the trial court. The packet was supported by declarations from plaintiff and her attorney, detailing defendants' violations of the ICA.

Ultimately, a default judgment in the amount of $21,105,135 was entered against Kang, NIW, and Rex, including

attorney fees ($79,500) and costs ($2,135).[5]  A default judgment was also entered against Ban in the amount of $2,081,635, including attorney fees and costs.[6]

This timely appeal ensued.

## DISCUSSION

I. *Terminating Sanctions*

A. Standard of review and relevant law

"California discovery law authorizes a range of penalties for conduct amounting to 'misuse of the discovery process.' [Citations.]  As relevant here, misuses of the discovery process include . . . '[m]aking an evasive response to discovery' [citations]; and '[d]isobeying a court order to provide discovery' [citations]." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991 (*Doppes*).)  Section 2023.030, subdivision (d), permits the trial court to impose a terminating sanction for misuse of the discovery process.  (See *Doppes*, *supra*, at p. 991.)

As the parties agree, "[t]he trial court has broad discretion in selecting discovery sanctions, subject to reversal only for abuse. [Citations.]  The trial court should consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should "'attempt[] to tailor the sanction to the harm caused by the withheld discovery.'" [Citation.]  The trial court cannot impose sanctions for misuse of the discovery process as a punishment.  [Citation.]" (*Doppes*, *supra*, 174 Cal.App.4th at p. 992.)

---

[5]     The default judgment included $1,023,500 in general damages and $20 million in civil penalties.

[6]     The monetary judgment against Ban was limited to $2 million in civil penalties as pled in the FAC.

"The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination. . . . If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse. 'A decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' [Citation.]" (*Doppes, supra,* 174 Cal.App.4th at p. 992, fn. omitted.)

B. <u>Trial court did not abuse its discretion in granting plaintiff's motion for terminating sanctions</u>

On December 2, 2019, defendants stipulated to a court order that they serve complete responses to plaintiff's discovery by December 31, 2019. They did not comply, forcing plaintiff to file several motions to compel compliance and for sanctions, all of which were at least partly successful. After being given numerous opportunities to comply with trial court orders, Kang never filed proper responses to plaintiff's special interrogatories and NIW never filed proper responses to the request for production of documents. Pursuant to well-established legal authority, under these circumstances, the trial court did not err in imposing terminating sanctions against Kang and NIW. (*Steven M. Garber & Associates v. Eskandarian* (2007) 150 Cal.App.4th 813, 820.)

Urging us to reverse, Kang and NIW insist that they had complied with all outstanding discovery requests.[7]  But, based upon its familiarity with the case and the evidence submitted in support of the discovery motions, the trial court acted well within its discretion in finding otherwise.  Kang and NIW were given numerous opportunities to respond properly to plaintiff's discovery requests; in fact, they were ordered multiple times by the trial court to serve complete, code-compliant, verified discovery responses without objection.  Yet, there was no evidence that they ever fully did so.[8]

Finally, defendants argue that the trial court only imposed terminating sanctions to punish them.  There is no such evidence in the appellate record; in fact, as set forth above, it appears that the trial court imposed terminating sanctions as a last resort— over a year after it first ordered defendants to comply with

---

[7]    Specifically, defendants claim that "[f]ull, code compliant responses were in fact served through email, on October 29, 2020."  But the appellate record shows that claim to be false.  In fact, defense counsel admitted that he could not serve all discovery responses via e-mail and at least one set of responses was inadvertently omitted.

[8]    Likewise, on appeal, defendants direct us to nothing to support their claim that they fully complied with the trial court's discovery orders.  "'[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal.'" (*People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891, 899.)

10

plaintiff's discovery requests. In any event, without a reporter's transcript or an agreed or settled statement of the proceedings at the relevant hearings, we do not know the basis of the trial court's reasoning. (*Rhule v. WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1228–1229.)

II. *Damage award*

A. <u>Standard of review and relevant law</u>

1. *Default judgment damages*

As set forth above, section 2023.030 authorizes "a court to strike an answer as a sanction for misuse of the discovery process. Once the answer is stricken, the case proceeds as if the defendant had never responded to the complaint. [Citation.] Section 580, subdivision (a), limits the amount of damages a court may award whenever an answer has not been filed, or has been stricken: 'The relief granted to the plaintiff, if there is no answer, cannot exceed that which he or she shall have demanded in his or her complaint.'" (*Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1173.) Section 580 applies to default judgments rendered as discovery sanctions. (*Electronic Funds Solutions, LLC v. Murphy*, *supra*, at p. 1175.)

"[A] default judgment rendered in violation of section 580 is void . . . because it is beyond the court's jurisdiction to enter such a judgment." (*Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 974.) "The issue of whether a judgment is void on its face is a question of law, which we review de novo. [Citations.]" (*Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 961.)

2. *The ICA*

"California's immigration consultants act . . . (Bus. & Prof. Code, § 22440 et seq.) regulates nonattorneys who offer advice or assistance to a particularly vulnerable population, immigrants

11

seeking legal residency in the United States."  (*Mendoza v. Ruesga* (2008) 169 Cal.App.4th 270, 274, fn. omitted.)

Business and Professions Code section 22446.5, subdivision (a), allows a person aggrieved by an immigration consultant to "bring a civil action for injunctive relief or damages, or both.  If the court finds that the defendant has violated a provision of this chapter, it shall award actual damages, plus an amount equal to treble the amount of actual damages or one thousand dollars ($1,000) per violation, whichever is greater."  (Bus. & Prof. Code, § 22446.5, subd. (a).)

In addition, the ICA provides for "a civil penalty not to exceed one hundred thousand dollars ($100,000) for each violation, to be assessed and collected in a civil action brought by any person injured by the violation."  (Bus. & Prof. Code, § 22445, subd. (a)(1); see also Bus. & Prof. Code, § 22445, subd. (a)(2) ["The court shall impose a civil penalty for each violation of this chapter"].)

B. Trial court awarded excessive damages against Kang, NIW, and REX

In her FAC, plaintiff alleges that defendants "violated each and every provision of" the ICA.  The FAC specifies 18 categories of violations.  She prays for "general and special damages," as well as "treble damages" under the ICA.  She also asks for "a civil penalty of $100,000 for each individual violation of the ICA, estimated to exceed $2,000,000."

These allegations are insufficient to sustain a judgment against Kang, NIW, and REX in the amount of $21,105,135.  "The purpose of section 580 is to require the plaintiff to provide notice of the *maximum* amount of the defendant's potential liability." (*Electronic Funds Solutions, LLC v. Murphy*, *supra*,

134 Cal.App.4th at p. 1174.)  The FAC here, however, seeks damages "estimated to exceed" $2 million.  "Thus, rather than giving defendants notice of their *maximum* liability, the [FAC] purports to provide notice of their *minimum* liability.  Other than stating that damages will be at least [$2 million], the [FAC] provides notice no better than pleadings which seek 'damages according to proof.'  [Citation.]  Indeed, nothing in the [FAC] would give anyone reason to suspect a default judgment could be entered specifying" special and general damages in the amount of $20 million, an amount ten times greater than the amount expressly requested in the FAC. (*Electronic Funds Solutions, LLC v. Murphy*, *supra*, 134 Cal.App.4th at p. 1174.)

The instant case is distinguishable from *People ex rel. Lockyer v. Brar* (2005) 134 Cal.App.4th 659 (*Brar*).  "In *Brar*, the Attorney General filed suit against an attorney who repetitively filed 'shakedown' lawsuits against small businesses.  Although the Attorney General's complaint sought damages 'in an amount of not less than $1,000,000,' [the court of appeal] affirmed a $1,787,500 default judgment.  Because the Attorney General's complaint stated it was seeking a statutory penalty of $2,500 per violation of the unfair competition law [citation], and that approximately 500 [businesses] had been named . . . in each of at least three separate lawsuits, the defendant could have calculated potential damages from the face of the complaint of at least $3.75 million (i.e., $2,500 times 1,500).  In the present situation, nothing in the [FAC] provided defendants with information sufficient to calculate" damages in excess of $21 million. (*Electronic Funds Solutions, LLC v. Murphy*, *supra*, 134 Cal.App.4th at p. 1174.)

13

Because the FAC here is wholly ineffective under section 580 to support a default judgment in excess of $2 million, the damage award must be limited to that amount. (See, e.g., *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 492.)

In their appellate briefs, the parties focus on whether the damage award is supported by substantial evidence. This argument puts the cart before the horse. We only review the evidence to support the default judgment *after* we have determined that the damages are within the scope of what is requested in the complaint. In other words, even if we assume without deciding that the declarations offered in support of plaintiff's default judgment package are sufficient to support a $20 million damage award, that award still cannot stand based upon what is pled in the FAC.

In her respondent's brief, plaintiff asserts that because she served Kang, NIW, and REX with a statement of damages, they were on notice of the damages being sought. In support, she directs us to the request for entry of default judgment form. There are at least two flaws with this argument.

First, "[s]tatements of damages are used only in personal injury and wrongful death cases, in which the plaintiff may not state the damages sought in the complaint. [Citation.] In all other cases, when recovering damages in a default judgment, the plaintiff is limited to the damages specified in the complaint. [Citations.]" (*Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 206, fn. 4.) Thus, at best, plaintiff could serve a statement of damages regarding her personal injury damages. But plaintiff offers no legal authority to support her supposition that a statement of damages can be used to put a defendant on notice of

civil penalties. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Second, the statement of damages identified on the request for entry of default judgment form is insufficient as it did not provide notice to defendants of the amount of damages sought *before* their defaults were entered. (*Electronic Funds Solutions, LLC v. Murphy, supra,* 134 Cal.App.4th at p. 1173; see also *Sass v. Cohen* (2020) 10 Cal.5th 861, 877 ["The standard forms that litigants must file for . . . judgment of default . . . must be completed and filed before default may be taken [and] make clear that plaintiffs are required to state a specific dollar amount as the relief demanded"]; *Jones v. Interstate Recovery Serv.* (1984) 160 Cal.App.3d 925, 929 ["Where a default judgment is entered without defendant being informed of the potential special damages, the defendant lacks sufficient knowledge to make the decision of defending against or ignoring plaintiff's claims"].)

While we are reversing the judgment of $21 million against Kang, NIW, and REX, we are not reversing or modifying the attorney fee and cost award. On appeal, defendants assert that plaintiff improperly received a double recovery for her costs and attorney fees. After reviewing the appellate record, they are mistaken. The entire attorney fee and cost award was entered against all four defendants jointly and severally; the only reason the amounts were differentiated was in an effort to award $21,023,500 against Kang, NIW, and REX and $2 million against Ban. In any event, in light of our conclusion that the entire judgment against all four defendants is limited to $2 million, plus attorney fees ($79,500) and costs ($2,135), there should be no further confusion.

15

## DISPOSITION

The order granting plaintiff's motion for terminating sanctions against Kang and NIW is affirmed. The default judgment entered against Ban is affirmed. The default judgment entered against Kang, NIW, and REX is reversed and the matter is remanded to the trial court with directions to modify the judgment to award plaintiff $2 million in damages, plus attorney fees and costs, for a total of $2,081,635. Parties to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT


16