THURSTON (MARSHALL v.). See Case No. 9,132.

---

## Case No. 14,018.

### THURSTON v. MARTIN.

[5 Mason, 497.] [1]

Circuit Court, D. Rhode Island. June Term, 1830.

FALSE IMPRISONMENT — IMPRISONMENT FOR NON-PAYMENT OF TAXES—LIABILITY THEREFOR— NEW TRIAL.—EXCESSIVE DAMAGES.

1. Trespass lies against a collector of taxes, for imprisoning a party who is taxed as an inhabitant of a town, if he is not an inhabitant; for the assessors have no right to tax a person not an inhabitant; and if they do, it is an excess of jurisdiction.

[Cited in Brown v. Mason, 40 Vt. 160. Disapproved in Nowell v. Tripp, 61 Me. 429. Cited in Wall v. Trumbull, 16 Mich. 251.]

2. A new trial will not be granted on account of excessive damages, unless the jury have mistaken the principles of law, which ought to regulate damages, or have been guilty of some gross error, which shows an improper feeling or bias on their part.

[Cited in Allen v. Blunt, Case No. 217; Alsop v. Commercial Ins. Co., Id. 262; Wiggin v. Coffin, Id. 17,624; Ward v. Richmond & D. R. Co., 43 Fed. 424.]

[Cited in Pegram v. Stortz, 31 W. Va. 252, 6 S. E. 503; Skottowe v. Oregon S. L. & U. N. Ry. Co. (Or.) 30 Pac. 228.]

This was an action of trespass for false imprisonment, brought [by Joseph Thurston] against the defendant [Joseph Martin], who was collector of taxes for the town of Newport, R. I. The defendant pleaded not guilty, with leave to give special matter in evidence. At the trial it was proved, that the defendant had arrested and imprisoned the plaintiff for the non-payment of a town tax, assessed on him for the year 1827, and that he was discharged upon payment of the tax. The real controversy at the trial turned up-

---

[1] [Reported by William P. Mason, Esq.]

on the point, whether the plaintiff was an inhabitant of Newport, and so liable to be assessed for taxes there. It appeared in evidence, that the plaintiff was born in Newport, and had lived there until the year 1815 or 1816, and that his mother still resides there. In 1815 or 1816, being then of age, he went to reside as a trader at Georgetown, South Carolina, and from that time to the time of the suit he had continued his occupation there. He usually went to Georgetown every autumn in October, and remained there until June, and kept a store or shop of goods there, and performed such patrole and other duty as was required of him there, and paid taxes there. The sickly season coming on in June, he came northward every year at that time, and usually passed his summers and autumn until October at Newport, making purchases at the northward, principally for sale at Georgetown. It is usual for the inhabitants, during the sickly season, to leave Georgetown for the North, and return back in the manner the plaintiff did. The plaintiff is a single man, and has no family. Several of the inhabitants of Newport are in the habit of keeping shops of goods in Georgetown, and going there in the autumn and returning in June, at the time when the sickly season comes on, and of paying taxes at Georgetown. Some of these have families at Newport, and consider it as their home. The plaintiff was first taxed in Newport, after his removal in 1816. For one or two years the tax, being small, was paid by the plaintiff. He afterwards objected; and in some years the tax was remitted, and in some years he was not taxed. He resisted payment of taxes for several years before 1827, and refused performance of military duty as an inhabitant of Newport; and being sued for a militia fine was successful in his defence, setting up his non-inhabitancy as a defence. From the time of his first removal to Georgetown in 1815 or 1816, he never acted in any public business as an inhabitant of Newport; and for the last ten years he had constantly spoken of himself in public and private, as an inhabitant of Georgetown. These were the principal facts upon which the question of domicil turned at the trial.

THE COURT instructed the jury, that if upon the whole facts they were of opinion, that the domicil of the plaintiff was at Georgetown, he was entitled to recover in this form of action, and such damages should be given as the jury thought a fair compensation for the loss and injury to the plaintiff; but it was not a case for vindictive damages. The jury found a verdict for the plaintiff for $505.

Hazard & Randolph, for defendant, moved for a new trial. (1) Because the damages were excessive; (2) because trespass could not lie against the defendant, who was a mere ministerial officer in collecting the tax.

Pearce & Turner, è contra, for plaintiff.

The authorities and reasoning of the counsel are fully stated in the opinion of the court, and it is unnecessary to repeat them.

Before STORY, Circuit Justice, and PITMAN, District Judge.

STORY, Circuit Justice. The motion for a new trial is founded upon two grounds: first, of excessive damages; and secondly, that an action of trespass does not lie against the defendant, who is a mere ministerial officer, for collecting the tax.

The first question may be disposed of in a few words. The damages are certainly higher than what, had I sitten on the jury, I should have been disposed to give; and I should now be better satisfied, if the amount had been less. The charge of the court directed the jury, if they found for the plaintiff, not to give vindictive damages; but to give (if the jury thought proper) such a compensation as would indemnify the plaintiff for the necessary expenses incurred in the suit, beyond what he would receive in the shape of costs. The jury were, however, left at liberty to consider all the circumstances of the case, which might, in their opinion, enhance the right to damages, such as the arrest and imprisonment. It is one thing for a court to administer its own measure of damages in a case properly before it, and quite another thing to set aside the verdict of a jury, merely because it exceeds that measure. The court in setting aside a verdict for excessive damages, should clearly see, that they are excessive; that there has been a gross error; that there has been a mistake of the principles, upon which the damages have been estimated; or some improper motives, or feelings, or bias, which has influenced the minds of the jury. If the verdict be not subjected to some such imputations, it is not the practice of the court to disturb the verdict. It is an exercise of sound discretion, which in some degree interferes with the conclusiveness of verdicts, and ought not to be resorted to except in clear cases. Upon a mere matter of damages, where different minds might, and probably would, arrive at different results, and nothing, inconsistent with an honest exercise of judgment, appears, I, for one, should be disposed to leave the verdict, as the jury found it. The doctrine of adjudged cases seems to me to support this view of the matter, and it instructs us to be very slow in listening to applications of this sort. Now, I cannot say, judicially speaking, that the damages, taking all the circumstances together, are excessive, though they are larger than I should have given. The arrest and imprisonment, and the nature of the contest between the town and the plaintiff, as to the right to tax him, compelled him, after other efforts were exhausted, to resort for a vindication of his rights to a suit. He had been harassed from year to year by taxes, and no disposition, notwithstanding a long

continued struggle on his part to resist them, was evinced by the assessors, to relieve him from the burthen. The jury probably looked to this, and deemed the suit absolutely indispensable, and at the same time very onerous upon the party. Under these circumstances, I am not disposed to interfere with the verdict.

The other is a question of more importance. The general principle to be extracted from the authorities is this,—Where a mere mere ministerial officer acts under the authority of a court, or other board or tribunal, of a limited jurisdiction, there if the act be beyond their jurisdiction, he is, or may be, liable in trespass. But where there is jurisdiction over the person and the subject matter, there he is not liable for any irregularity or mistake in the exercise of that jurisdiction. This was so decided upon full consideration in the Case of the Marshalsea, 10 Coke, 68b. 76. In that case (which was trespass), a writ of execution had issued against the plaintiff, as bail, in a suit decided in the court of the Marshalsea, upon which he was arrested and imprisoned. The defendants pleaded the judgment and execution in their defence, and the plaintiff replied, that neither the plaintiff nor the defendant in the original suit were servants of the king. And upon demurrer it was holden a good replication, and that trespass well lay against the defendants. The doctrine of this case has never been departed from, though there may have been in some few cases a misapplication of it. Com. Dig. "Imprisonment," H. 8, H. 9; Id. "Pleader," 3, M. 23, 24. See, also, Hill v. Bateman, 2 Strange, 711; Shergold v. Holloway, 2 Strange, 1002; Papillon v. Buckner, Hardr. 478; Terry v. Huntington, Id. 480; Perkins v. Proctor, 2 Wils. 382; Brown v. Compton, 8 Term R. 424; 1 Chit. Pl. 183.

In relation to taxes, where a party has been illegally assessed, there are other authorities directly in point to establish that trespass lies. If the person taxed, or the subject matter of taxation, be not within the authority of the officers, who make the assessment, all subsequent proceedings by mere ministerial officers, under a warrant to enforce the tax, are deemed utterly void, the original assessment being coram non judice. The case of Nichols v. Walker, Cro. Car. 394, was trespass brought by an inhabitant of one parish, who was rated in another, not being liable to be rated there. The rate was allowed by two justices of the peace, in the manner prescribed by law; and upon a warrant by three justices, the goods of the plaintiff were distrained, and sold to pay the rate. Upon an exception taken, that trespass did not lie against the defendants, who were mere ministerial officers, acting under the warrant, the court held, that the action was well brought, for the rate being unduly taxed, the warrant of the justices for the levy thereof will not excuse, for the justices have but a particular jurisdiction, to make warrant to relieve rates well assessed, and so

the plaintiff had judgment. This case was fully recognised as sound law in Perkins v. Proctor, 2 Wils. 382, 384, where the whole subject was most elaborately considered; and the cases of Harrison v. Bulcock, 1 H. Bl. 68; Williams v. Pritchard, 4 Term R. 2; Mayor v. Knowler, 4 Taunt. 635; Lord Amherst v. Lord Sommers, 2 Term R. 372,—silently proceed upon the admission of its correctness.

Thus far as to the English cases. In America the question has also been discussed. In Martin v. Mansfield, 3 Mass. 419, 427, the reporter states, that the court strongly inclined, that trespass would not lie against a collector of taxes, where the party was not liable to be taxed. But I, having been counsel in the cause, have reason to know, that the reporter states the point too strongly. The court did so incline until authorities were cited, which shook their opinion; but the assessors being responsible, it was thought unnecessary to argue the question of the liability of the collector, and his name was struck out by consent. In my own copy of the Reports, I find the following memorandum made in March, 1809, upon page 427,—"This is too strongly stated. At first, the court did so incline, but upon Story's citing several authorities, the opinion was shaken. But as the court intimated a clear opinion upon the general question in favour of the plaintiff, recommended, to save time, by waiving the present incidental question, the parties consented to strike out the name of the collector." In later cases, however, the correctness of the English doctrine has been recognised. The general principle was acted on in Albee v. Ward, 8 Mass. 79, and it was largely commented on in Colman v. Anderson, 10 Mass. 105, 119. See, also, Dillingham v. Snow, 5 Mass. 547, 559; Gage v. Currier, 4 Pick. 399; Inglee v. Bosworth, 5 Pick. 498. In New York, the same question has undergone several adjudications. In Henderson v. Brown, 1 Caines, 92, the whole court admitted the soundness of the doctrine, that if the assessment were made upon a subject matter, not within the jurisdiction of the assessors, the whole proceedings by the collector were void under his warrant. But a majority of the court in that case thought, that the property was liable to the assessment, though described in an improper manner. In Suydam v. Keys, 13 Johns. 444, the question arose in a form substantially like that now before the court. Certain persons, not being inhabitants, were assessed for a school tax, which by law could be assessed only upon inhabitants. The collector (against whom the suit was brought) had taken and sold the plaintiff's goods to pay the same. The court held, that the action (trover) well lay against the defendant, because the plaintiffs were not taxable in any degree, nor under any modification. See, also, Wood v. Peake, 8 Johns. 69; Warner v. Shed, 10 Johns. 140; Smith v. Shaw, 12 Johns. 257. And in Cable v. Cooper, 15 Johns. 152, 157, the court

held, "that every tribunal, proceeding under special and limited powers, decides at its peril; and hence it is, that process issuing from a court not having jurisdiction, is no protection to the court, to the attorney, or the party, nor even to a ministerial officer, who innocently executes." A doctrine equally conclusive was held by the supreme court of the United States, in Wise v. Withers, 3 Cranch [7 U. S.] 331, where it was decided, that trespass lay against a collector of militia fines, for taking the goods of the plaintiff to satisfy a fine imposed upon him by a court martial for non-performance of militia duty, and for which the collector had a warrant from the court, the plaintiff, as a justice of the peace, not being liable to militia duty. The court said, that the decision of such a tribunal, in a case clearly without its jurisdiction, cannot protect the officer who executes it. The court and the officer are all trespassers. The only authority against this general current of opinion that I have met with, is, the case of Beach v. Furman, 9 Johns. R. 229. But that case, if it can be sustained as law, which may admit of question, proceeded upon the ground, that the parties acted under the authority of a person, who had jurisdiction in the case, and it admits, that if there were no jurisdiction, all the parties would be trespassers. Looking therefore to the authorities, and to the principles upon which those authorities are founded, it appears to me very clear, that an action of trespass lies in the present case, unless there is something in the statute of Rhode Island, on the subject of taxes, which ought to vary the rule. Upon looking into that statute (Dig. 1822, p. 310), I cannot perceive any thing that ought to vary the general rule. The assessors are to assess and apportion the taxes upon the inhabitants of the town, or the rateable estates within the same. They have no authority to assess any person not being an inhabitant, and the jury have found, that the plaintiff was not an inhabitant at the time of the present assessment, or liable to any assessment. The assessment being made, they are to send a true bill or list thereof, to the town clerk, who is to deliver a true copy thereof to the town treasurer, who is to make out his warrant to the collectors of taxes to collect the same. The general course of the provisions on this subject, does not, in substance, differ from that of the other New England states. But the material consideration is, that the power of the assessors is limited and special. It is confined to inhabitants and rateable estates within the town. It follows, that if they assess persons not inhabitants, or estates not within the town, their jurisdiction is exceeded, and the proceedings, as to such persons and estates, are utterly void. If so, no justification can arise to any collector upon proceedings utterly void. The foundation failing, the superstructure must fall with it.

Upon the whole, I am of opinion, that the motion for a new trial ought to be overruled.

The district judge concurs in this opinion, and the motion for a new trial is, therefore, overruled, and judgment must be entered for the plaintiff according to the verdict.