177 Cal.App.4th 36 (2009)
FRANCHISE TAX BOARD, Petitioner,
v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent;
TOM GONZALES, as Personal Representative, etc., Real Party in Interest and Respondent.
No. A122723.
Court of Appeals of California, First District, Division Five.
August 27, 2009.
*39 Edmund G. Brown, Jr., Attorney General, Paul D. Gifford, Assistant Attorney General, William L. Carter and Jeffrey A. Rich, Deputy Attorneys General, for Petitioner.
No appearance for Respondent.
Martin A. Schainbaum, Martin A. Schainbaum and Bryant W. H. Smith for Real Party in Interest and Respondent.

*40 OPINION
SIMONS, J.
Section 19382 of the Revenue and Taxation Code (hereafter section 19382)[1] authorizes taxpayer refund actions against the Franchise Tax Board. The statute is silent as to the right to a jury determination of disputed facts in such actions. This case presents an issue of first impression: Is a taxpayer entitled to a trial by jury pursuant to article I, section 16 of the California Constitution in an action permitted by section 19382? Resolution of this question turns on whether an analogous action would have been cognizable in the common law courts in 1850, when the California Constitution was first adopted. (C & K Engineering Contractors v. Amber Steel Co. (1978) 23 Cal.3d 1, 8 [151 Cal.Rptr. 323, 587 P.2d 1136] (C & K Engineering Contractors).)[2] Our review of the relevant common law history demonstrates that, before adoption of our Constitution, taxpayers could sue tax collectors for a refund in a common law action for money had and received, and were provided the right to a jury. Thus, taxpayers should have the right to a jury in modern tax refund actions against the state, under section 19382. We conclude the superior court properly denied a motion of the Franchise Tax Board (petitioner) to strike the jury demand of real party in interest Tom Gonzales (Gonzales)[3] as to his refund claim. However, Gonzales does not have a right to a jury trial on petitioner's cross-complaint to recover a penalty. The petition for writ relief is granted in part.

BACKGROUND
In July 2006, Gonzales filed a complaint seeking refund of California personal income taxes for 2000 and 2001. The complaint alleges that, in 2004, the estate of decedent Thomas J. Gonzales II paid over $15 million to the state in connection with California's Voluntary Compliance Initiative, a tax amnesty program. The estate reserved the right to seek a refund. The complaint further alleges that the $15 million paid was not due because the estate was entitled to deductions for substantial capital losses from investments in the year 2000. The underlying dispute relates to whether the transactions resulting in the losses were "abusive tax avoidance transactions." Gonzales seeks refund of the entire $15 million paid in 2004 with respect to *41 the 2000 tax year, and an additional refund of $2,175 with respect to the 2001 tax year. Petitioner filed a cross-complaint, which was subsequently amended, seeking to recover from the estate a penalty of almost $2.5 million.
Gonzales demanded a jury trial in a November 2006 joint case management conference statement. In May 2008, petitioner moved to strike Gonzales's jury demand. The motion was denied in July 2008, and in September 2008, petitioner filed the present petition for writ of mandate and/or prohibition, contending the superior court had erred. We issued an order to show cause to address this important issue of first impression. (See Southern Pac. Transportation Co. v. Superior Court (1976) 58 Cal.App.3d 433, 435 [129 Cal.Rptr. 912] [propriety of order granting jury trial is appropriately tested in a prohibition proceeding]; accord, Hodge v. Superior Court (2006) 145 Cal.App.4th 278, 282 [51 Cal.Rptr.3d 519].)

DISCUSSION
The issues of whether Gonzales has a right to jury trial with respect to the refund action and petitioner's cross-complaint are pure questions of law that we review de novo. (Caira v. Offner (2005) 126 Cal.App.4th 12, 23 [24 Cal.Rptr.3d 233]; accord, Mendoza v. Ruesga (2008) 169 Cal.App.4th 270, 283 [86 Cal.Rptr.3d 610].)

I. General Principles Regarding the Right to Jury Trial in California

(1) Article I, section 16 of the California Constitution provides in pertinent part that "[t]rial by jury is an inviolate right and shall be secured to all ...." This right to jury trial "is the right as it existed at common law in 1850, when the Constitution was first adopted, `and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact.' [Citations.]" (C & K Engineering Contractors, supra, 23 Cal.3d at p. 8; see also DiPirro v. Bondo Corp. (2007) 153 Cal.App.4th 150, 178 [62 Cal.Rptr.3d 722] (DiPirro).) (2) "`"The term `Common Law' often refers to those principles of English Law which were evolved in the Common Law Courts, as opposed to the principles which were applied in the Courts of Chancery and Admiralty and the Ecclesiastical Courts...."'" (People v. One 1941 Chevrolet Coupe (1951) 37 Cal.2d 283, 288 [231 P.2d 832] (One 1941 Chevrolet Coupe).) Generally speaking, if a cause of action was cognizable in the English common law courts, as distinguished from the courts of equity (principally the court of chancery), there was a right to trial by jury. (See C & K Engineering Contractors, at p. 8 ["As a general proposition, `[T]he jury trial is a matter of right in a civil action at law, but not in equity.'"]; One 1941 Chevrolet Coupe, at p. 296 ["`"broadly speaking, one may say that actions in the common law courts *42 were tried by jury ..."'"]; 1 Holdsworth, A History of English Law (1956) p. 298 ["The method almost universally employed by the common law to ascertain the truth about disputed facts is the jury."]; id. at p. 453 [discussing equitable jurisdiction of court of chancery].)
(3) Because of the many differences between modern and common law pleading requirements and forms of action, the critical inquiry is whether the cause of action at issue in the present case is analogous to an action cognizable in the common law courts in 1850. "`"If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular casethe gist of the action. A jury trial must be granted where the gist of the action is legal, where the action is in reality cognizable at law."' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought `depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. [Citations.]" (C & K Contractors, supra, 23 Cal.3d at p. 9.) It is not critical whether a particular right of action existed in 1850; the critical inquiry is whether the current case is of the same "`nature'" or "`class'" as one which existed at law in 1850. (One 1941 Chevrolet Coupe, supra, 37 Cal.2d at pp. 299-300; see also Jefferson v. County of Kern (2002) 98 Cal.App.4th 606, 613-614 [120 Cal.Rptr.2d 1].)
(4) "The right to a trial by jury is fundamental and `should be zealously guarded by the courts.' [Citations.] `In case of doubt ..., the issue should be resolved in favor of preserving a litigant's right to trial by jury....' [Citation.]" (Blanton v. Womancare, Inc. (1985) 38 Cal.3d 396, 411 [212 Cal.Rptr. 151, 696 P.2d 645].) "`Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.' [Citation.]" (Beacon Theatres v. Westover (1959) 359 U.S. 500, 501 [3 L.Ed.2d 988, 79 S.Ct. 948]; accord, Mendoza v. Ruesga, supra, 169 Cal.App.4th at p. 284.)

II. A Tax Refund Claim Is "Legal" in Character

(5) The "gist" of Gonzales's tax refund action is a legal, rather than an equitable, claim. It is true that, as petitioner points out, courts have stated that "[a]ctions to recover taxes paid under protest are equitable in nature." (Simms v. County of Los Angeles (1950) 35 Cal.2d 303, 316 [217 P.2d 936]; see also Jibilian v. Franchise Tax Bd. (2006) 136 Cal.App.4th 862, 868 [39 Cal.Rptr.3d 123].) That language in Simms arose in the context of the court's assertion that a property owner seeking to challenge the validity of a tax must *43 first pay the tax to the taxing authority, because "he who seeks equity must do equity ...." (Simms, at p. 316.) However, our Supreme Court has also made it clear that "a suit for a refund of taxes is in the nature of an action in assumpsit ..." (Northrop Aircraft v. Cal. Emp. etc. Com. (1948) 32 Cal.2d 872, 879 [198 P.2d 898]), which is a common law action for money had and received (Philpott v. Superior Court (1934) 1 Cal.2d 512, 517 [36 P.2d 635]). (See also Lewis v. Reynolds (1932) 284 U.S. 281, 283 [76 L.Ed. 293, 52 S.Ct. 145] ["`The action to recover on a claim for refund is in the nature of an action for money had and received, and it is incumbent upon the claimant to show that the United States has money which belongs to him.'"].) The action is legal, even though a plaintiff's right to recover depends on equitable principles. As explained in Philpott, at page 522, "`That an action is of an equitable nature does not make it an action in equity.... When, in an action for money had and received, all the facts show that the plaintiff is ex aequo et bono entitled to recover, his right to recover is a legal one, and maintainable in a court of law....'" (See also Jogani v. Superior Court (2008) 165 Cal.App.4th 901, 907-909 [81 Cal.Rptr.3d 503] (Jogani).)
That the relief sought is monetary, rather than equitable, is further confirmation that Gonzales's tax refund action is an action at law. (Wisden v. Superior Court (2004) 124 Cal.App.4th 750, 757-758 [21 Cal.Rptr.3d 523]; see also Asare v. Hartford Fire Ins. Co. (1991) 1 Cal.App.4th 856, 867 [2 Cal.Rptr.2d 452] ["Determining whether the gist of a claim is in law or equity `depends in large measure upon the mode of relief to be afforded.'"]; Flying Dutchman Park, Inc. v. City and County of San Francisco (2001) 93 Cal.App.4th 1129, 1138 [113 Cal.Rptr.2d 690] [characterizing the relief in a tax refund action as legal].)

III. At Common Law There Was a Right to Jury Trial in Refund Actions Against Tax Collectors

(6) Although the determination that the gist of Gonzales's action is legal normally would compel a conclusion that the right to jury trial applies, the actual determinative issue is whether, as "`a purely historical question,'" the right existed for the action at common law in 1850. (C & K Engineering Contractors, supra, 23 Cal.3d at p. 8; see also One 1941 Chevrolet Coupe, supra, 37 Cal.2d at pp. 286-287 ["`The right to trial by jury guaranteed by the Constitution is the right as it existed at common law at the time the Constitution was adopted.'"].) "[I]f a proceeding otherwise identifiable in some sense as a `civil action at law' did not entail a right to jury trial under the common law of 1850, then the modern California counterpart of that proceeding will not entail a constitutional right to trial by jury. [Citations.]" (Crouchman v. Superior Court (1988) 45 Cal.3d 1167, 1174 [248 Cal.Rptr. *44 626, 755 P.2d 1075] [holding there is no constitutional right to a jury in an appeal from small claims court].) Accordingly, we turn to a historical analysis of tax refund actions.

A. Tax Refund Claims Were Brought Against Collectors in Common Law Courts

At common law, individuals had no right of action against the sovereign, enforceable by jury trial or otherwise. (See Galloway v. United States (1943) 319 U.S. 372, 388 [87 L.Ed. 1458, 63 S.Ct. 1077]; McElrath v. United States (1880) 102 U.S. 426, 440 [26 L.Ed. 189, 16 Ct.Cl. 630]; 9 Wright & Miller, Federal Practice and Procedure: Civil (3d ed. 2008) § 2314, pp. 174-175.) However, common law history shows that taxpayers were able to assert claims for tax refunds by bringing actions against tax collectors rather than against the sovereign itself. The doctrine permitting suits against collectors was "devised by the courts ... to do justice to taxpayers who, at one time, could not directly sue the government to recover wrongful exactions by its officers." (Hammond-Knowlton v. U.S. (2d Cir. 1941) 121 F.2d 192, 194; see also Plumb, Tax Refund Suits Against Collectors of Internal Revenue (1947) 60 Harv. L.Rev. 685, 687 (Plumb) [describing suits against collectors as a "fiction" that "originated in a desire of the courts to do justice"]; Moore Ice Cream Co. v. Rose (1933) 289 U.S. 373, 382 [77 L.Ed. 1265, 53 S.Ct. 620].)
Actions for money had and received were the closest analogue to a modern tax refund action (Northrop Aircraft v. Cal. Emp. etc. Com., supra, 32 Cal.2d at pp. 879-880), and the common law courts heard claims for tax refunds in actions for money had and received against tax collectors. In Stevenson v. Mortimer (1778) 98 Eng.Rep. 1372, a custom house officer was held liable in an action for money had and received brought by the owners of a boat, who alleged that the officer had charged the boat master fees which were inapplicable under the relevant statute and that the fees charged were excessive. (Id. at pp. 1372-1373.) In Camplin v. Bullman (1761) 145 Eng.Rep. 755, the plaintiff purchased a French ship taken as a prize by a British warship and challenged in an action for money had and received certain duties imposed by the English customs collector. (Id. at pp. 755-756.) The court held the plaintiff was properly charged a duty generally applicable to goods and merchandise, but should not have been charged an additional duty applicable to French-made sails. (Id. at pp. 758, 764.) In Campbell v. Hall (1774) 98 Eng.Rep. 1045, 1047, 1050, the issue was whether the government properly imposed export duties on a Grenada plantation in accordance with the prevailing duties in the British leeward islands rather than with the amount imposed by the French king prior to British conquest of Grenada. The decisions in Camplin and Campbell describe special verdicts rendered by juries finding the facts and leaving the legal issues for determination by the courts.
*45 As we will explain below, American cases decided before the adoption of the California Constitution in 1850 recognized that, under the English common law, tax collectors could be held liable in refund actions for money had and received. (See, e.g., Elliott v. Swartwout (1836) 35 U.S. 137, 156-158 [9 L.Ed. 373] (Swartwout); Bend v. Hoyt (1839) 38 U.S. 263, 267 [10 L.Ed. 154].)

B. The Decision in U.S. v. New Mexico
In concluding Gonzales has a right to jury trial in the refund action, the trial court relied on the Tenth Circuit's decision in U.S. v. New Mexico, (10th Cir. 1981) 642 F.2d 397 (New Mexico). In that case, the United States sued the State of New Mexico because the state had collected an allegedly unauthorized tax from a subcontractor of a contractor working for the United States, who passed the expense along to the federal government. (Id. at pp. 398-399.) The trial court denied New Mexico's request for a jury trial. (Id. at p. 399.) The Tenth Circuit treated the suit as an action for a tax refund and concluded that taxpayers had a common law right to jury trial in refund actions brought against tax collectors. (Id. at pp. 400-401.) The court cited a University of Pennsylvania Law Review article for its discussion of "English precedents for jury trial of an action to recover taxes assessed and paid" and for the proposition that early American cases "indicate that juries were used when a taxpayer sued to recover taxes illegally exacted." (Ibid., citing Kirst, Administrative Penalties and the Civil Jury: The Supreme Court's Assault on the Seventh Amendment (1978) 126 U.Pa. L.Rev. 1281, 1313-1320, 1328-1331 (Kirst).) "[S]olid doctrine emerged that subjected the administrative officials such as tax collectors to the power of the common law courts.... The use of the common law actions in the common law courts necessarily involved civil jury trial as an essential part of the procedure." (Kirst, at p. 1318.) New Mexico also stated that, in authorizing jury trials against the United States in federal tax refund cases in 1954, Congress reaffirmed the common law right to a jury: "The legislative history says that jury trials had always been permitted in actions brought against appropriate revenue collectors by taxpayers seeking to recover taxes wrongfully collected. [Citation.]" (New Mexico, at p. 401.)
Petitioner asserts the New Mexico decision erred in characterizing the 1954 federal jury trial statute (Act of July 30, 1954, ch. 648, Pub.L. No. 83-559, 68 Stat. 589) as a reaffirmation of the historical right to a jury. Petitioner cites footnote 8 in Lehman v. Nakshian (1981) 453 U.S. 156, 161 [69 L.Ed.2d 548, 101 S.Ct. 2698], which explains that there was significant reluctance in Congress to provide for jury trials in suits against the United States. Petitioner also cites footnote 8 in Standard Oil Co. of Cal. v. Arizona (9th Cir. 1984) 738 F.2d 1021, 1027, which asserts that, in light of Lehman, the New *46 Mexico decision erred in its characterization of Congress's action. However, the New Mexico court did not suggest there was a common law history of jury trials in suits naming the United States or another sovereign as the defendant. (New Mexico, supra, 642 F.2d at p. 401.) And neither Lehman nor Standard Oil discusses the history of juries in tax refund suits against tax collectors, which was the focus of the New Mexico case. The legislative history supports New Mexico's characterization of Congress's action. One of the two congressional reports cited in footnote 8 of Lehman states that "jury trials have always been permitted" in refund actions against tax collectors, and "continued preservation of the fiction that the action is against an individual ...rather than against the Government itselfis unwarranted." (Conf.Rep. No. 2276, 83d Cong., 2d Sess. (1954), reprinted in 1954 U.S. Code Cong. & Admin. News, pp. 2720, 2721.) The other report acknowledges that actions against collectors for refund of excessive taxes "derive[] from the common law." (H.R.Rep. No. 659, 83d Cong., 1st Sess. (1953), reprinted in 1954 U.S. Code Cong. & Admin. News, pp. 2716, 2717, fn. 4.)

C. The Common Law Right to Jury Trial Was Not Limited to Actions Where the Claim Was That No Tax Was Due

Petitioner does not dispute that jury trials were provided in tax refund actions against tax collectors, but it argues the existence of this right depended upon a distinction between refund actions claiming overpayment and those claiming that no tax is due. In supplemental briefing requested by this court, petitioner describes the cases in which common law refund actions were available as "cases where the tax collector acted in excess of his jurisdiction." (See also Kirst, supra, 126 U.Pa. L.Rev. at p. 1332 ["[T]he common law action had developed as a procedure to contest whether any tax liability existed and not to contest the amount of the tax."].) Petitioner then contends this limited right to a jury at common law provides no support for extending the right to the broad range of refund actions permitted by section 19382. A review of the common law cases undermines the suggested distinction and establishes that the type of refund claim involved in this case falls within the scope of the jury trial right.
Refund claims in some common law trespass actions were limited to situations where the collector lacked jurisdiction. The Case of the Marshalsea (K.B. 1612) 77 Eng.Rep. 1027 (Marshalsea), was an important early effort to elevate the common law courts over the many specialized courts. (Kirst, supra, 126 U.Pa. L.Rev. at p. 1317.) The case was an action for "trespass of assault, battery, wounding and false imprisonment against" marshals of one of these specialized courts (the Court of the Marshalsea). (Marshalsea, at p. 1028.) The common law court allowed the action because the marshals lacked any jurisdiction over the plaintiff; had the marshals had jurisdiction, *47 the plaintiff could not have asserted a claim based on an erroneous exercise of the jurisdiction. (Marshalsea, at pp. 1039-1041; see also Thurston v. Martin (C.C.D.R.I. 1830) 23 F.Cas. 1189, 1191, F.Cas.No. 14018; Kirst, supra, 126 U.Pa. L.Rev. at p. 1320.) In Patchett v. Bancroft (K.B. 1797) 101 Eng.Rep. 1024, the court rejected the plaintiff's claim of trespass for the taking of his cattle because the warrant of distress resulting in the taking was properly issued, despite the fact that the plaintiff objected to one of the several taxes underlying the warrant. (Id. at pp. 1024-1026; see also Kirst, at p. 1320 & fn. 200 [citing Patchett for the proposition that "the common law actions were not available to challenge the amount of an assessment or tax ..."].)
Although the 1612 Marshalsea decision may have been important in the development of the power of the common law courts, and although courts hearing trespass actions may have continued to focus on the existence of jurisdiction, the late-18th-century actions for money had and received discussed above were not based on Marshalsea. The courts heard the actions despite the fact that the governmental officials involved had apparent jurisdiction over the plaintiffs. That is, the common law courts heard claims for refunds not only in trespass actions where collectors were entirely without jurisdiction, such as where the taxpayer was not an inhabitant of a locality within the collector's jurisdiction (Nichols v. Walker & Carter (K.B. 1634) 79 Eng.Rep. 944), but also in actions for money had and received where it was claimed that tax collectors had collected too much tax. In Stevenson v. Mortimer, supra, 98 Eng.Rep. at page 1373, one issue was whether fees charged on a boat were excessive. In Camplin v. Bullman, supra, 145 Eng.Rep. at pages 758, 764, the issue was whether the plaintiff was properly charged, in addition to general duties applicable to goods and merchandise, a duty applicable to French-made sails. Finally, in Campbell v. Hall, supra, 98 Eng.Rep. at pages 1045-1047, 1050, the issue was whether the applicable export duties were the prevailing British duties or the (presumably lower) duties imposed by the French king. In each of those actions the court heard a claim for refund of only a portion of the total imposition. None of the cases suggests an action for money had and received is available only where the claim is that no tax is due.
The only authority to the contrary of which we are aware is Whitbread v. Brooksbank (K.B. 1774) 98 Eng.Rep. 970, 972, where the court stated without explanation or citation to authority that "an action for money had and received will not lie against an Excise officer for an over-payment ...." Whitbread was an overpayment claim regarding the statutory calculation of the bounty on beer. (Id. at pp. 971-972.) The court's statement was dicta because the defendant excise officer waived the objection to the action and the case was decided on the merits. (Id. at p. 972.) The court's assertion in Whitbread is contradicted by the actions for money had and received *48 discussed above. At most, the language in Whitbread suggests there may have been some varying practice in the common law courts with respect to overpayment claims, although our research has not disclosed any cases that cite Whitbread for the proposition referred to above.
American cases decided before adoption of the California Constitution in 1850 provide further support for a right to jury trial in actions for partial tax refunds. Most prominently, in Swartwout, supra, 35 U.S. at pages 156-158, the United States Supreme Court concluded that a customs collector could be held liable in an action for money had and received to recover a portion of import taxes. Swartwout was an overpayment case, in which the issue was whether certain articles imported by the plaintiff were subject to an ad valorem tax applicable to "manufactures of wool" or to a lower tax applicable to "worsted" goods. (Id. at pp. 151-152.) Relying on English common law precedents, the court held the collector was subject to the action to recover the excess paid so long as the plaintiff gave notice of the claim of error at the time of payment. (Id. at pp. 157-158.) In 1839, the Supreme Court followed Swartwout in another overpayment of duties case, stating "there is no doubt, that the collector is generally liable in an action to recover back an excess of duties paid to him as collector, where the duties have been illegally demanded, and a protest of the illegality has been made at the time of the payment, or notice then given that the party means to contest the claim; whether he has paid over the money to the government or not." (Bend v. Hoyt, supra, 38 U.S. at p. 266.) The decision indicates the plaintiff's claims were heard by a jury. (Id. at p. 264.)[4]
Swartwout was overruled in 1845 by Cary v. Curtis (1845) 44 U.S. 236 [11 L.Ed. 576] (Cary), not because Cary disagreed with Swartwout's reasoning, but because of a statutory change following Swartwout. Specifically, Swartwout reasoned it was fair to hold a customs collector liable in a refund action if he had received notice of the claimed error, because he could hold onto the funds rather than turning them over to the treasury. (Swartwout, supra, 35 U.S. at p. 158.) In 1839, Congress passed a law prohibiting customs collectors from holding onto funds in such circumstances. (Cary, at pp. 240-241.) Cary concluded that, because the collector could no longer hold onto the money pending resolution of a refund action, it would be unfair to hold him personally liable. (Cary, at p. 251.)
*49 It does not appear Cary was indicative of a change in the English common law. "Within a few weeks" of the Cary decision, Congress "passed an `explanatory Act' to the effect that the 1839 provision should not be construed to take away or impair the right of any person who had paid duties under protest to maintain an action at law against a Collector of Customs `to ascertain and try the legality and validity of such demand and payment of duties, and to have a right to a trial by jury, touching the same, according to the due course of law.'" (Plumb, supra, 60 Harv. L.Rev. at p. 690, quoting Act of Feb. 26, 1845, ch. 22, 5 Stat. 727.) Moreover, the Supreme Court continued to regard Swartwout as an accurate statement of common law principles. In 1866, in the income tax context, City of Philadelphia v. The Collector (1866) 72 U.S. 720, 731-732 [18 L.Ed. 614] (City of Philadelphia), cited Swartwout, supra, 35 U.S. 137, for the proposition that the "[a]ppropriate remedy to recover back money paid under protest on account of duties or taxes erroneously or illegally assessed, is an action of assumpsit for money had and received." The court also cited Bend v. Hoyt, supra, 38 U.S. 263, for the proposition that, "when the duties or taxes are illegally demanded, ... the collector may be compelled to refund the amount illegally exacted." (City of Philadelphia, at p. 732; see also Erskine v. Van Arsdale (1872) 82 U.S. 75, 77 [21 L.Ed. 63] [following a jury trial, stating that "Taxes illegally assessed and paid may always be recovered back, if the collector understands from the payer that the taxes are regarded as illegal and that suit will be instituted to compel the refunding of them."].)
Accordingly, the historical analysis shows that at the time of adoption of the California Constitution in 1850, there was a long history of common law actions for money had and received against tax collectors, which actions included a right to jury trial. (See also Jogani, supra, 165 Cal.App.4th at pp. 905-906 [at common law, assumpsit actions were tried by juries].) Those actions were not limited to claims that no tax was due.[5] It makes sense that a different rule might apply in trespass actions. If a tax collector has jurisdiction over a person or subject matter, and some tax is indisputably due, it is problematic to characterize the collector's seizure of goods as a trespass. (See Thurston v. Martin, supra, 23 F.Cas. at p. 1191; see also Miller v. National Broadcasting Co. (1986) 187 Cal.App.3d 1463, 1480 [232 Cal.Rptr. 668] ["`The essence of the cause of action for trespass is an "unauthorized entry" onto the land of another....'"].) On the other hand, it makes sense that an action for money had and received could be directed at any portion of money wrongfully collected. The fact that some amount was due would not make the excessive demand lawful. (See Philpott, supra, 1 Cal.2d at p. 522 [action *50 "will lie for money had and received wherever one person has received money which belongs to another, and which ... in justice and right, should be returned."].) As the Supreme Judicial Court of Massachusetts explained in Torrey v. Millbury, supra, 38 Mass. at page 70, "as this is an action of assumpsit, to recover back money which the plaintiff was not liable to pay, and as it is entirely practicable to distinguish that part of the tax which was valid from that which was void, the Court [is] of [the] opinion, that the plaintiff is entitled to recover ..." the portion wrongfully assessed.
(7) To the extent there is any uncertainty regarding the scope of claims cognizable in the common law actions or variance in the historical practice, we will not use such uncertainty or variance to justify restricting the right to jury trial. "`The constitutional right of trial by jury is not to be narrowly construed.'" (One 1941 Chevrolet Coupe, supra, 37 Cal.2d at p. 300.) (8) Gonzales's tax refund action "is the type of action which was cognizable in a common-law court, and triable by a jury," and we conclude Gonzales has a state constitutional right to a trial by jury of the issues of fact in this action. (Ibid.)[6]

D. Distinguishing the Tax Collection Cases

(9) We reject petitioner's argument that we should deny the right to jury trial in refund cases because of the well-established law that a taxpayer is not entitled to a jury trial in a tax collection case. (Sonleitner v. Superior Court (1958) 158 Cal.App.2d 258, 262 [322 P.2d 496].) It is clear that in 1850 there was no common law right to jury trial in tax collection proceedings. (Kelly v. Pittsburgh (1881) 104 U.S. 78, 80 [26 L.Ed. 658] ["Taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings."]; see also Sonleitner, at p. 262.) "The typical eighteenth century collection procedure allowed the collector to seize or distrain the property of the tax debtor and then to sell the property to obtain the money to satisfy the taxes; the method was nonjudicial and did not involve the courts at any stage from assessment to collection. Collection of a federal duty by distress and sale was authorized by Congress soon after the United States was formed." (Kirst, supra, 126 U.Pa. L.Rev. at pp. 1294-1295, fn. omitted.) Our decision turns on an examination of the historical facts in the refund context, not on a misplaced analogy to the collection context; the common law history for each is different.[7] (See Cooley, A Treatise on the Law of Taxation (2d ed. 1886) pp. 49-50 [there is no right to jury trial in a collection action, but "if the *51 officers intrusted with the execution of the laws transcend their powers to the injury of an individual, the common law entitles him to redress"].)

E. Distinguishing Voluntary Payments

Petitioner further argues that, to the extent refund claims could be brought against tax collectors as common law actions with juries, such actions could only be brought "where payment of the tax was involuntary and the tax or property was still in the hands of the tax collector." Petitioner seems to suggest Gonzales's payment was voluntary, but that reflects a misunderstanding of the concept. It is correct that, at common law, a voluntary payment could not be recovered in an action for money had and received. (Swartwout, supra, 35 U.S. at pp. 153-155.) Swartwout explained this doctrine as follows: "[W]here a man demands money of another, as [a] matter of right, and that other, with a full knowledge of the facts upon which the demand is founded, has paid a sum of money voluntarily, he cannot recover it back." (Id. at p. 154.) Similarly, in City of Philadelphia, supra, 72 U.S. at pages 731-732, the court stated: "Where the party voluntarily pays the money, he is without remedy; but if he pays it by compulsion of law, or under protest, or with notice that he intends to bring suit to test the validity of the claim, he may recover it back, if the assessment was erroneous or illegal, in an action of assumpsit for money had and received."
(10) In this case, Gonzales's complaint alleges that the decedent's estate reserved its rights to seek a refund at the time it made an additional payment and filed an amended year 2000 tax return as part of the tax amnesty program. This was the appropriate course of action, because "`[a] taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax.'" (California Logistics, Inc. v. State of California (2008) 161 Cal.App.4th 242, 247 [73 Cal.Rptr.3d 825].) Gonzales contends the estate's payment with reservation of rights to sue for a refund put petitioner on notice of the dispute as to whether the estate actually owed the amount paid in 2004. Swartwout, supra, 35 U.S. at page 153, supports Gonzales's position, suggesting that a payment is not voluntary if there is "any declaration made to the collector of an intention to prosecute him to recover back the money." (See also City of Philadelphia, supra, 72 U.S. at pp. 731-732.) Petitioner presents no authority that the circumstances in this case involve a voluntary payment for which a common law action for money had and received would have been unavailable.[8]

*52 IV. Petitioner's Arguments Based on Sovereign Immunity Do Not Defeat Gonzales's Right to Jury Trial

A number of petitioner's arguments for writ relief are based on the doctrine of sovereign immunity, which petitioner contends forecloses any right to a jury in this case regardless of any history of common law refund actions against tax collectors.
(11) "The general expression of the doctrine of sovereign immunity is that the state may not be sued without its consent." (People v. Superior Court (Pierpont) (1947) 29 Cal.2d 754, 757 [178 P.2d 1].) Sovereign immunity is reflected in provisions of the California Constitution, which provide that "[s]uits may be brought against the State in such manner and in such courts as shall be directed by law" (Cal. Const., art. III, § 5) and authorize refund actions against the state only "in such manner as may be provided by the Legislature" (Cal. Const., art. XIII, § 32).[9] The Legislature has provided for refund actions in section 19382, which constitutes a consent to be sued according to the terms of the statute. (See People v. Superior Court (Pierpont), at pp. 756-757.)

A. The Change in the Identity of the Defendant Does Not Defeat Gonzales's Jury Trial Claim

Because persons asserting claims against the sovereign had no right to jury trial in the common law courts (see Galloway v. United States, supra, 319 U.S. at p. 388), petitioner contends there was no historical counterpart at common law to the refund action in this case. Petitioner argues the common law cases discussed previously are distinguishable, because those actions were brought against individual tax collectors and not against the sovereign itself.
*53 Petitioner's argument is supported by decisions of the United States Supreme Court interpreting the Seventh Amendment.[10] The court has broadly rejected application of the Seventh Amendment to suits against the United States, without considering whether the rights at issue in the actions were adjudicated before juries in common law courts. (See, e.g., Lehman v. Nakshian, supra, 453 U.S. at pp. 160-163 & fn. 9 [age discrimination suit against the United States]; Galloway v. United States, supra, 319 U.S. at pp. 388-389 [claim for insurance benefits following denial by the Board of Veterans' Appeals].) In a tax refund matter, the Supreme Court concluded the right to a jury trial is statutory and "not to be found in the Seventh Amendment." (Wickwire v. Reinecke (1927) 275 U.S. 101, 105 [72 L.Ed. 184, 48 S.Ct. 43] (Wickwire).) And cases in other states have followed Wickwire in the refund context. (See, e.g., Coeur D'Alene Lakeshore v. Kootenai County (1983) 104 Idaho 590, 596 [661 P.2d 756, 762]; Matthews Contracting Co. v. S. C. Tax Comm. (1976) 267 S.C. 548, 554 [230 S.E.2d 223, 226]; Dexter Horton Bldg. Co. v. King County (1941) 10 Wn.2d 186, 195 [116 P.2d 507, 511].)[11]
(12) With respect, we decline to follow Wickwire. The California Supreme Court has described our task as determining if the current case is of the same "`nature'" or "`class'" as one entitled to a jury trial at common law. (One 1941 Chevrolet Coupe, supra, 37 Cal.2d at pp. 299-300; DiPirro, supra, 153 Cal.App.4th at p. 179.) As detailed in part III above, at common law jury trials were provided in tax refund actions. These cases were nominally filed against individual tax collectors, but the ultimate issue was the plaintiff's liability to the government for the tax collected. To conclude that the Legislature effectively rescinded that jury trial right when it enacted a statute authorizing tax refund suits directly against the state would allow the form of the action to take precedence over the nature of the rights involved. (Jogani, supra, 165 Cal.App.4th at p. 908 ["a court must look past the form or label attached to the plaintiff's claim and discern its substance ..."].) Because a taxpayer could bring an action in a common law court to determine a substantive right to a tax refund, such a claim is within the scope of the right to jury trial in the California Constitution, even though the present action is pursuant to a statute authorizing suit against petitioner, the Franchise Tax Board. (See DiPirro, at p. 179 ["`[T]he fact that the particular statute or offense was not in existence when the Constitution was adopted is *54 not determinative; if the same type or class' of action `called for a jury trial, the right is carried over to the new statute.'"].)
This conclusion is supported by the decision in Jefferson v. County of Kern, supra, 98 Cal.App.4th 606. There, the plaintiff sued a county and a physician for fraud and malpractice. (Id. at p. 609.) The trial court denied the plaintiff's request for a jury trial regarding when his causes of actions accrued, and concluded the plaintiff had failed to comply with the claim presentation requirements of the California Tort Claims Act (Gov. Code, § 810 et seq.). (Jefferson, at p. 609.) The Court of Appeal held the plaintiff's right to jury trial under the California Constitution had been violated. (Jefferson, at p. 610.) The court rejected the county's argument that, because there was no claim statute in existence in 1850, "`there is no inherent right to a jury trial against a public entity unless that right is found in a statute ....'" (Id. at pp. 612-613.) The court reasoned: "The `gist' of the issue about when a cause of action for damages accrued is legal, because it is determinative of the plaintiff's right to bring such a cause of action at law. The fact the issue arises in the context of the claims statutes rather than in the context of the statute of limitations, and the fact that the defendant is a public entity rather than a private person or entity, are not distinctions that make a difference. The nature of the inquiry and the purpose of the inquiry are the same ...." (Id. at p. 614.) The same reasoning applies in the present case. In fact, Gonzales's claim to a jury is even stronger because of the history of common law tax refund actions against collectors; Jefferson does not discuss any history of analogous actions providing relief for torts committed by the sovereign.
Finally, a taxpayer's right to a jury trial in a California refund action is a matter of California law. (See Howard Contracting, Inc. v. G. A. MacDonald Construction Co. (1998) 71 Cal.App.4th 38, 52 [83 Cal.Rptr.2d 590] ["federal decisional authority is neither binding nor controlling in matters involving state law"]; see also Jehl v. Southern Pac. Co. (1967) 66 Cal.2d 821, 827 [59 Cal.Rptr. 276, 427 P.2d 988] [the 7th Amend. "differs significantly in language from the California constitutional provision"].) Wickwire's conclusion appears to be dicta and includes minimal analysis and no discussion of the history of common law refund actions. (Wickwire, supra, 275 U.S. at p. 105.)[12] The state cases following Wickwire, cited above, contain no discussion of the historical record. And the California Supreme Court has *55 declined to follow cases from other jurisdictions that fail to discuss right to jury trial issues "in terms of the common law practice in England and the United States before 1850." (One 1941 Chevrolet Coupe, supra, 37 Cal.2d at p. 301; see also Wisden v. Superior Court, supra, 124 Cal.App.4th at p. 757 ["The absence of the necessary historical analysis is telling."].)[13] We rely on California precedent to determine Gonzales's right to jury trial as a "`purely historical question'" (C & K Engineering Contractors, supra, 23 Cal.3d at p. 8) in light of the "`nature of the rights'" at issue in the modern and common law refund actions (One 1941 Chevrolet Coupe, at p. 299). Our conclusion that the change in identity of the defendant is not dispositive is further buttressed by our obligation to construe the right to jury trial broadly and to resolve all doubts in favor of this right. (Blanton v. Womancare, Inc., supra, 38 Cal.3d at p. 411; One 1941 Chevrolet Coupe, at p. 300.)

B. Section 19382 Does Not Deny Gonzales the Right to a Jury Trial

(13) Petitioner argues a California tax refund action is "statutory in nature" and there is a right to jury trial only if so granted by the Legislature. (See Southern Service Co., Ltd. v. Los Angeles (1940) 15 Cal.2d 1, 11-12 [97 P.2d 963].) Because section 19382 is silent on the issue of whether a claimant has a right to jury trial, petitioner concludes no such right exists in this case. If petitioner were correct as a matter of statutory interpretation, we would be confronted with the question of what takes precedence: the constitutional right to jury trial or the constitutional provisions reflecting sovereign immunity, which allow the state to set conditions for suits in tax refund actions. As a general matter, the Legislature may not restrict the constitutional right to jury trial. (See People v. Collins (1976) 17 Cal.3d 687, 692 [131 Cal.Rptr. 782, 552 P.2d 742]; One 1941 Chevrolet Coupe, supra, 37 Cal.2d at p. 299.) However, those and similar cases did not consider whether principles of sovereign immunity would take precedence.
(14) Petitioner assumes that because the Constitution empowers the Legislature to specify the manner of tax refund actions, the Legislature's silence with respect to a right to jury trial means there is no such right. However, petitioner fails to provide authority supporting that proposition. The fact that the requirements expressly outlined in the statute must be complied with (see, e.g., Brandt v. Riley (1934) 139 Cal.App. 250, 254 [33 P.2d 845] [written protest requirement]), does not mean the Legislature intended to alter other applicable default rules. To the contrary, "If a statute merely gives permission to sue the state, through its officers acting in their official capacity, *56 the action so authorized is subject to existing statutes and rules applicable to such a form of action." (Innes v. McColgan (1942) 52 Cal.App.2d 698, 700 [126 P.2d 930].) Moreover, we presume the Legislature knew, when it enacted section 19382, that the right to jury trial existed with respect to tax refund claims. (Jefferson v. County of Kern, supra, 98 Cal.App.4th at p. 615 [presuming Legislature's knowledge of right to jury trial regarding accrual].) Accordingly, we can infer that, if the Legislature intended to deny that right, it would have done so expressly. (Id. at pp. 615-616.)[14]
(15) Absent specific direction in section 19382, the issue is governed by the default rule, which is found in Code of Civil Procedure section 592. (Sonleitner v. Superior Court, supra, 158 Cal.App.2d at p. 262; see also DiPirro, supra, 153 Cal.App.4th at p. 178; Innes v. McColgan, supra, 52 Cal.App.2d at p. 700.) That section provides that issues of fact must be tried by a jury "[i]n actions for the recovery of specific, real, or personal property, with or without damages, or for money claimed as due upon contract, or as damages for breach of contract, or for injuries ...." (Code Civ. Proc., § 592.) That language would seem to exclude a tax refund action, but refund actions, as actions for money had and received, are contractual in nature. In Philpott, supra, 1 Cal.2d at pages 521-522, the California Supreme Court described the cause of action as follows: "`If A receives money which belongs to B, under circumstances which give A no right thereto, but which bind A on principles of justice and fairness to repay such money to B, the common law allowed B to sue as on contract, although there was no express contract and no real implied contract, in order to prevent A's unjust enrichment at B's expense. (16) This principle has survived in our law, and an action as upon contract will lie for money had and received wherever one person has received money which belongs to another, and which in "equity and good conscience", or in other words, in justice and right, should be returned....'" (Italics added.) Furthermore, interpreting Code of Civil Procedure section 592 to encompass those tax refund actions within the scope of the constitutional jury trial right is the only reasonable interpretation of the statute because, in enacting the statute, the Legislature intended to mirror the common law scope of the right. (Crouchman v. Superior Court, supra, 45 Cal.3d at p. 1174.) Thus, the same historical analysis is called for in determining the scope of both the statute and the constitutional guarantee. (Id. at pp. 1174-1175.) And *57 our analysis on that issue, above, has led us to conclude there was a common law right to jury trial in a tax refund action.[15]
In conclusion, Gonzales has a right to jury trial in his tax refund action under the California Constitution and Code of Civil Procedure section 592.[16] Because section 19382 does not expressly deny that right, we need not consider whether, if it did, the right to jury trial would take precedence over principles of sovereign immunity in the tax context.[17] Petitioner's contention that the trial court erred is without merit.

V. Gonzales Does Not Have a Right to Jury Trial on the Cross-complaint

Petitioner's cross-complaint seeks to recover from Gonzales a penalty of almost $2.5 million under section 19164 of the Revenue and Taxation Code. It is clear that Gonzales is not entitled to a jury trial on that claim, because there was no common law right to a jury in a proceeding to collect taxes, including tax penalties. (Sonleitner v. Superior Court, supra, 158 Cal.App.2d at p. 262; see also Agnew v. State Bd. of Equalization (1999) 21 Cal.4th 310, 331-332 [87 Cal.Rptr.2d 423, 981 P.2d 52] [discussing Sonleitner].) Gonzales cites no authority to the contrary and does not attempt to distinguish Sonleitner.

DISPOSITION
The order to show cause is discharged. The petition is granted in part. Let a peremptory writ of prohibition issue restraining respondent superior court *58 from enforcing its order of July 22, 2008, to the extent that it permits a jury trial as to petitioner's cross-complaint. In all other respects, the petition is denied. Gonzales is awarded costs in this writ proceeding. (Cal. Rules of Court, rule 8.493.)
Jones, P. J., and Needham, J., concurred.
NOTES
[1] Section 19382 provides, "Except as provided in Section 19385, after payment of the tax and denial by the Franchise Tax Board of a claim for refund, any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the Franchise Tax Board for the recovery of the whole or any part of the amount paid."
[2] The California Constitution was approved by the voters in 1849 and California was formally admitted as a state in 1850. (Grodin et al., The Cal. State Constitution: A Reference Guide (1993) p. 8.)
[3] The taxpayer, Thomas J. Gonzales II, died in December 2001. In this decision, "Gonzales" refers to Tom Gonzales, as personal representative of the estate of Thomas J. Gonzales II.
[4] Another overpayment action from this period is Hearsey v. Pruyn (N.Y.Sup.Ct. 1810) 7 Johns. 179, in which the Supreme Court of New York held that, based on English common law precedents, a toll collector was liable for collecting tolls in excess of that authorized by statute. The decision does not identify the action as one for money had and received, but the court cites common law cases involving that cause of action. (Id. at p. 182.) The decision states there was a trial by jury in the case. (Id. at p. 179.) In Torrey v. Millbury (1838) 38 Mass. 64, 70 [21 Pick. 64], the Supreme Judicial Court of Massachusetts permitted an action of assumpsit to recover a portion of a local tax assessment against the plaintiff.
[5] Gonzales argues, in the alternative, that his claim is that "no tax is due" on the disputed year 2000 transactions, even though he does not deny that he owed some tax overall. Because we reject a narrow interpretation of the right to jury trial in tax refund actions, we need not address this argument.
[6] Our review of the transcript of the proceedings of the 1849 California constitutional convention did not reveal any relevant debate regarding the scope of the jury trial right.
[7] Although it is unclear how considerations of policy enter into the right to jury trial inquiry, it is worth noting that cases in the collection context emphasize concerns about the effects of "interference and delay in tax collection" not present in the tax refund context. (Sonleitner v. Superior Court, supra, 158 Cal.App.2d at p. 260.)
[8] Petitioner also refers to a requirement at common law that the funds sought remain in the hands of the collector, but that condition is not relevant to determining the existence of a jury trial right in this case, because the present suit is not against an individual tax collector. Moreover, that condition appears to lack clear support in the common law; Swartwout examined common law cases and concluded that a tax collector was liable in a refund action even if he had paid over the money to the treasury, as long as he had received notice of the possibility of a refund action. (Swartwout, supra, 35 U.S. at pp. 156-158.)
[9] Article XIII, section 32 of the California Constitution provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." Section 32 establishes that "the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid. [¶] The important public policy behind this constitutional provision `is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted.' [Citation.] `The fear that persistent interference with the collection of public revenues, for whatever reason, will destroy the effectiveness of government has been expressed in many judicial opinions. [Citation.] ...'" (State Bd. of Equalization v. Superior Court (1985) 39 Cal.3d 633, 638-639 [217 Cal.Rptr. 238, 703 P.2d 1131].)
[10] The Seventh Amendment to the federal Constitution provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."
[11] Cases in the tax collection context following Wickwire are irrelevant to determination of the right to jury trial in the tax refund context. (See, e.g., Phillips v. Commissioner (1931) 283 U.S. 589, 599, fn. 9 [75 L.Ed. 1289, 51 S.Ct. 608]; Mathes v. C. I. R. (5th Cir. 1978) 576 F.2d 70, 71.)
[12] Wickwire cited three prior United States Supreme Court decisions, two of which were tax refund actions. (Wickwire, supra, 275 U.S. at p. 106.) In those two cases, the court stated that the government may prescribe the conditions under which refund actions may be brought, and rejected suits where taxpayers failed to protest the amount of duties assessed (Nichols v. United States (1868) 74 U.S. 122, 127-128 [19 L.Ed. 125, 7 Ct.Cl. 36]) and failed to comply with the time limits specified in the refund statute (Cheatham et al. v. United States (1876) 92 U.S. 85, 89 [23 L.Ed. 561]). Neither case discussed the right to jury trial or the common law history of tax refund actions.
[13] In New Mexico, after an examination of the common law history, the court concluded, "[w]e are persuaded that the right of a taxpayer to a jury trial in refund cases is rooted in the common law and was preserved by the Seventh Amendment." (New Mexico, supra, 642 F.2d at p. 401.) New Mexico did not cite Wickwire.
[14] It appears that court actions for tax refunds were first authorized by the Legislature in 1893. (Former Pol. Code, § 3819, added by Stats. 1893, ch. 20, p. 32.) We have not located any relevant legislative history for that enactment or for any of the subsequent revisions, including section 19382.
[15] Moreover, the rule that "[a]ny doubts ... should be resolved in favor of preserving a litigant's right to trial by jury" is also applicable to this issue of statutory interpretation. (Maldonado v. Superior Court (1984) 162 Cal.App.3d 1259, 1266 [209 Cal.Rptr. 199].)
[16] In Lehman v. Nakshian, supra, 453 U.S. at page 168, the court held that a federal statute authorizing age discrimination suits against the United States did not provide for jury trials because Congress did not "affirmatively and unambiguously grant[] that right by statute." However, the court relied heavily on the proposition that there was no Seventh Amendment right to jury trial in the action. (Lehman, at pp. 160-163 & fn. 9.) It implied that, had the action been within the scope of the Seventh Amendment, the plaintiff would have had a right to jury trial under the federal analogue to Code of Civil Procedure section 592. (Lehman, at pp. 164-165.) Thus, our case is distinguishable; we have concluded Gonzales has a right to jury trial under the California Constitution. More fundamentally, Lehman reflects the fact that, as discussed above, the United States Supreme Court has broadly rejected application of the Seventh Amendment to suits against the United States, without considering whether the rights at issue were adjudicated before juries in common law courts.
[17] Because our interpretation of section 19382 avoids this constitutional question, it is consistent with the proposition that, when confronted with such a question, courts "`"will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."' [Citation.] The court should not espouse an interpretation which invites constitutional difficulties." (D'Amico v. Board of Medical Examiners (1970) 6 Cal.App.3d 716, 726 [86 Cal.Rptr. 245]; see also Parsons Brinckerhoff Quade & Douglas, Inc. v. Kern County Employees Retirement Assn. (1992) 5 Cal.App.4th 1264, 1268 [7 Cal.Rptr.2d 456].)